(No. 14836.—Judgment affirmed.)

THE BELLEVILLE BRICK AND TILE COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.— (CHARLES SINK, Defendant in Error.)

*Opinion filed December 19, 1922.*

1. WORKMEN'S COMPENSATION—*when party cannot complain of vacation of judgment without notice.* Where the circuit court vacates its judgment confirming an award and refers the cause back to the Industrial Commission for a further hearing, a party who appears at said hearing and introduces evidence cannot complain that the judgment was vacated without notice.

2. SAME—*what may be considered on review under paragraph (h) of section 19 of Compensation act.* On a review under paragraph (h) of section 19 of the Compensation act the only question open for consideration is whether the disability has recurred or increased or diminished or ended, and the only additional evidence which may be offered is whether the condition existing at the time of the award has changed, and although the evidence in the whole record shows that the original award was wrong, it cannot for that reason be set aside on said review.

3. SAME—*mental condition of injured employee does not affect his right to compensation.* The Compensation act makes no distinction based on mental conditions, and even though an applicant who has suffered permanent injury to his leg may be mentally defective, a hydrocephalic, or a moron with the mental equipment of a child, he is nevertheless entitled to the use of his leg and to compensation for being deprived of such use.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

JOHN A. BLOOMINGSTON, for plaintiff in error.

FRED H. KRUGER, and LOUIS J. GROSSMANN, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 26, 1917, defendant in error, Charles Sink, was employed by plaintiff in error, the Belleville Brick and Tile Company, and in wheeling clay with a wheelbarrow

305—37

to a machine, clay fell on his left leg, causing an impacted fracture on the inside of the neck of the femur. He was cared for at a hospital and made application to the Industrial Board for adjustment of his claim for compensation. On a hearing before an arbitrator an award was made on September 20, 1918, of $6.75 a week for 38 weeks and one day for temporary total incapacity for work and $6.75 per week for a period of 50 weeks thereafter, for the reason that the injury caused a loss of the use of the left leg. The applicant petitioned for a review of the award, and further evidence was introduced, resulting in a decision on January 8, 1919, by the Industrial Commission that he was entitled to $6.75 per week for 85 weeks for temporary total incapacity for work and $5.25 per week for a further period of 330 weeks for permanent partial incapacity. The proceeding was presented to the circuit court of St. Clair county on writ of *certiorari,* and on August 18, 1919, the court set aside and vacated the award of the Industrial Commission and approved and confirmed the award of the arbitrator. On August 25, 1919, the circuit court set aside and vacated the judgment entered on August 18 and referred the case back to the Industrial Commission for a further hearing. It is said that this was done without notice to the plaintiff in error, but that is immaterial, since it appeared on the hearing under the order and introduced evidence. The decision of the Industrial Commission on the second hearing under the remanding order was that the applicant was entitled to $6.75 per week for 416 weeks, and upon the expiration of said period to $18.72 per month as a pension for life. That decision was not reviewed, annulled or set aside, but the plaintiff in error filed a petition under paragraph (*h*) of section 19 of the Workmen's Compensation act, which provides that an agreement or award under the act providing for compensation in installments might at any time within eighteen months after such agreement or award be reviewed by the Industrial Commission at the re-

quest of either the employer or the employee on the ground that the disability of the employee had subsequently recurred, increased, diminished or ended, and on such review compensation payments might be re-established, increased, diminished or ended. The applicant had been committed to the insane asylum at Alton, and he was brought to East St. Louis, where a hearing was had under the petition in September, 1920, before one of the commissioners. Many witnesses were heard, and the commission decided that the disability of the applicant had not diminished or ended and the prayer of the petition was denied. On a writ of *certiorari* from the circuit court of St. Clair county the decision of the Industrial Commission was confirmed, and this court awarded a writ of error to review the decision of the circuit court.

Counsel for plaintiff in error regards the proceeding under paragraph (*h*) of section 19 as one to review and revise the award previously made, and calls attention to the evidence on the various hearings concerning the extent and consequences of the injury for the purpose of demonstrating that the award was excessive and unjust. That is an incorrect view of the statute, which only permits an inquiry whether the disability has subsequently recurred, increased, diminished or ended. The award of the Industrial Commission upon remandment by the circuit court was not brought in question, as provided by the statute, and it became a final and conclusive adjudication, binding upon both parties. Every matter in dispute up to the time of that award was finally determined, and the only question open for consideration was whether the disability had diminished or ended. It was the duty of the Industrial Commission to consider the evidence on the original hearing, and the only additional evidence which could be offered or considered, was whether the condition existing at the time of the award had changed. *Simpson Construction Co.* v. *Industrial Board,* 275 Ill. 366; *Bloomington, Decatur and*

*Champaign Railroad Co.* v. *Industrial Board,* 276 id. 120; *Casparis Stone Co.* v. *Industrial Board,* 278 id. 77.

On the original hearing the evidence for the applicant was that his leg was broken by the accident; that the leg was still sore and gave him pain; that it was shorter than the right leg and caused him to limp, and that there was some atrophy of the leg. The evidence for the plaintiff in error was that the leg was in good condition; that there had been a perfect union at the place of the fracture, not leaving any disability, and the leg was as near perfect as any fractured leg could be. On the review under the remanding order the additional evidence for the applicant was to the same effect as before, while the evidence for plaintiff in error was that the articulation at the head of the femur in the socket was not impaired; that there was some atrophy of the muscles of the leg and the leg was about a half inch shorter than the other and the measurements around it slightly less than on the other leg; that such a shortening was the result to be expected in every such fracture; that the strength of the leg was as good as ever, and if the applicant would throw away his cane and go to work he would be all right. On that hearing there was also evidence of several experts that the applicant was mentally defective and that his mentality was about like that of an eight-year-old child.

On the hearing of the petition under paragraph (*h*) of section 19, which alleged that the disability had diminished or ended, there was a great deal of evidence of experts, who testified at length almost entirely concerning the mental condition of the applicant. The witnesses for the parties did not disagree materially about that, and the evidence was that his mental status was that of a moron six or seven years of age; that he was a high-class imbecile; that his mental condition did not result from the accident but was congenital; that he had marks of degeneracy in his face;

that he was a hydrocephalic, having water on his brain, and that he was mentally deficient from birth. There was evidence for the applicant that after the accident he and his mother lived in rags and filth, not able to maintain themselves and assisted by the Woman's Relief Corps; that he worried about such conditions, which made his disability worse. Experts for the plaintiff in error said that he did not know what worry was; that he had enough normal stimuli to take his hand out of the fire, but it would make no difference to him whether he had clothes on his back or not. There was much incompetent evidence even on the question of mental condition, and none of the evidence on that subject was of any importance on the question submitted for decision as to whether the disability had diminished or ended, because there was no evidence tending to prove that there had been any improvement in condition since the award. The Workmen's Compensation act makes no distinction based on mental conditions, and if the applicant was mentally defective from birth, a hydrocephalic, or a moron with the mental equipment of a child of six or seven years, he was entitled to the use of his leg and compensation for being deprived of such use. The compensation is based on previous earnings and earning capacity and is measured by loss of such capacity due to the accident and not on mental condition except in that regard. The earnings of the applicant had not been large. If the evidence in the whole record, from first to last, shows that the award was wrong, it was not open to question and could not be set aside for that reason.

The judgment is affirmed.          *Judgment affirmed.*