## ARKANSAS BEST FREIGHT SYSTEM, INC. *v.* WALTER BROOKS

5-4449                                    424 S. W. 2nd 377

Opinion delivered February 26, 1968

*Harper, Young, Durden & Smith,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

LYLE BROWN, Justice. The trial court affirmed a finding of the Workmen's Compensation Commission

that appellee, Walter Brooks, was totally disabled. The employer-appellant, Arkansas Best Freight System, Inc., controverted any disability in excess of fifty per cent to the body as a whole, that being the highest medical disability in evidence. Appellant contends there is not sufficient competent evidence to warrant an award based on total and permanent disability. The attorney's fee is also questioned.

On the issue of degree of disability we shall examine the facts in the light most favorable to the Commission's findings. Brooks was fifty-two years old at the time of the accident. He attended school some two or three years and thinks he "made it through the second grade." For thirty-six years he had been a truck driver, sixteen years for ABF. He sustained injuries in an accident on February 28, 1962, while operating a tractor-trailer unit. Principally the lower back and neck were injured. Because of the injuries he was able to work only intermittently under medication from the time of the accident until late in October. Surgery was performed in early November. The vertebral laminae on one side were removed; because of the "hour-glass constriction" at the L-3 and L-4 interspaces it was performed bilaterally; a ruptured intervertebral disc at the right L-4 interspace was removed, as well as the disc at L-3. His medical and hospital expenses have been approximately $3,-000. While he was under therapy after the operation he was advised by the doctor to try driving. He went out on a few runs for ABF but stated that the pain was unbearable even under medication. Since those experiences he has not been able to do any physical labor. He tried to run a power lawnmower in the summer of 1966 but was unable to do so. In early 1967, he testified, he lifted his granddaughter, who weighed about seventeen pounds, and the strain placed him in traction. He says he is presently unable to drive his own car. He has been on medication continuously since the accident. A few hours in a sitting position causes pain and causes the right leg to go to sleep. Bed rest is required twice daily.

Brooks and two other truck drivers of long experience described the usual duties of truck transport operators. Besides actual driving they load and unload freight at terminals along their route; they change trailers, which involves rolling "the dolly wheels down and get the pin open on the fifth wheel"; sometimes it is a two-man job; the turning of corners with a heavy load requires substantial physical exertion; some trips take up to fifteen hours, including driving, loading, and unloading.

Two surgeons, one an orthopedic and the other a neurological surgeon, estimated Brooks' disability. The latter performed Brooks' surgery. He estimated Brooks' disability to be 25 per cent to 30 per cent to the body as a whole and stated that the disability prevented claimant from driving a transport truck and performing the incidental duties. As to functional disability the orthopedist assessed 25 per cent and estimated "that for additional matters this might be doubled to 50%." The additional disability was described as "psychophysiological," a term used to describe a reaction by the patient based on both his emotional and physical state. The doctor found no evidence of malingering. He was further of the opinion that Brooks would be running a risk if he lifted more than forty or fifty pounds.

The pronouncement in *Glass* v. *Edens,* 233 Ark. 786, 346 S. W. 2d 685 (1961), settled the law with reference to non-scheduled injuries. "Loss of the use of the body as a whole" involves two factors. The first is the functional or anatomical loss. That percentage is fixed by medical evidence. Secondly, there is the wage-loss factor, that is, the degree to which the injury has affected claimant's ability to earn a livelihood. As stated in *Mann* v. *Potlatch Forests,* 237 Ark. 8, 371 S. W. 2d 9 (1963), the second element is to be determined by the Commission, based on medical evidence, age, education, experience, and other matters reasonably expected to affect the earning power. We might add that whether an

injured claimant can be trained to perform other work is ofttimes a factor.

Actually, the rule in *Edens* is far from new to jurisprudence. It is stated that "Arkansas was one of the last states to give consideration to loss of wages or diminution of earning capacity as an element in determining awards for disability." It is by far the majority rule, as pointed out by Prof. Robert R. Wright in "Compensation for Loss of Earning Capacity," Ark. L. Rev. 269 (1965).

Had a jury reached the same conclusion as did the Commission, we could not say there was no substantial evidence to support it. That is the test. Considering the medical testimony, age, experience, and education (all of which have been described), we hold the Commission's findings to be substantially supported.

The remaining question concerns allowance of the attorney's fee. For thirty-nine weeks ABF paid temporary total disability. Then for 124 weeks Brooks was paid for permanent partial disability based on 27½ per cent permanent partial disability to the body as a whole. Under date of October 19, 1966, ABF gave notice of suspension of compensation. That was the proper expiration date if its liability did not exceed the formula based on 27½ per cent disability. Objection was made either by the claimant or by his attorney and the matter was set for hearing. One week before the hearing, counsel for ABF advised Brooks' attorney that ABF would accept an evaluation of 50 per cent permanent partial disability. It is ABF's contention that it has never controverted 50 per cent partial; Brooks contends that it controverted any amount over 27½ per cent partial. The Commission found that ABF had in fact controverted any disability exceeding 27½ per cent. For 124 weeks ABF contended that was the maximum disability and suspended payments when it had met that liability. After Brooks employed counsel to protect his rights, and just one week before the scheduled hearing, ABF raised the figure to

50 per cent. ABF's suspension of payments amounted to a declaration that it considered its obligation completed and intended to pay no more. Brooks protested. Therefore the issue was joined. Dr. Stanton advised ABF under date of June 6, 1966, that he fixed the medical disability at 50 per cent. Notwithstanding, ABF continued to make payments on the basis of 27½ per cent until October, at which time notice of final payment was given. We cannot say the Commission erred.

Affirmed.