JOHNSON COUNTY et al v. Charlie TIMMONS

5-5469. 463 S. W. 2d 365

Opinion delivered February 22, 1971

*Jones, Gilbreath & Jones,* for appellants.

*J. Marvin Holman,* for appellee.

LYLE BROWN, Justice. This is a workman's compensation case. Our Workmen's Compensation Commission found appellee claimant to have permanent partial disability to the body as a whole to the extent of seventy per cent. The trial court affirmed and the employer and the carrier appeal, contending that there is no substantial evidence to justify a disability greater than ten per cent.

Appellee was employed by appellant Johnson County, working as a laborer with the road crew in maintenance, repair, and construction. At the time of his injury appellee had removed a large rock that was blocking a culvert. He said he was carrying the rock up a slippery embankment and became overbalanced; that he "made a quick turn to get rid of the rock and when I did is what hurt my back; I crawled up the embankment."

Appellee had worked in the coal mines for some forty years as a laborer, loading coal and operating a coal cutting machine. He went to work for Johnson County in 1955. At the time of the mishap he was sixty-four years old and had a second grade education. He has never had any special training for a particular skill.

According to appellee the county judge advised him that his trouble was a muscular strain and would work itself out; that he continued to work for a week or ten days and the pain did not subside; and that he went to see his family doctor, Dr. Shrigley in Clarksville, who prescribed medication. The back condition did not improve and appellee went back to his doctor, who hospitalized him and put him in traction for some ten days. Upon being discharged appellee returned to work but after a few days he said the pain became so severe that he returned to Dr. Shrigley. The latter obtained through Travelers Insurance Company (the carrier) an appointment for appellee with Dr. Lohstoeter, an or-

thopaedic surgeon in Little Rock. Appellee was hospitalized for about two weeks and received therapy. Dr. Lohstoeter fitted appellee with a leather support belt. Appellee returned home and worked one day "but I couldn't make it." He returned to Dr. Lohstoeter and was again hospitalized for some two weeks.

From the time of his discharge until the day of the compensation hearing appellee insists that he was unable to return to work. He says he has worked a little in the garden "an hour or so and then I rest on account of my back gets to hurting." He testified that prior to the injury complained of, he had worked regularly all his life and had experienced no serious injury or hospitalization of any significance. Appellee's wife and daughter corroborated his testimony regarding the difference in appellee's ability to work before and after the accident.

Dr. Shirgley testified for appellee. He has been appellee's physician for some ten years. He diagnosed appellee's condition as acute lumbro-sacral sprain with sciatic radiation. He concluded that claimant suffered from a ruptured intervertebral disc, tenderness in the low back, right lower leg muscle disturbance with loss of sensation, and degenerative disc disease. He described degenerative disc disease "as where the intervertebral disc becomes injured or mashed together, in which there is a protrusion of this disc which presses on the nerve." He advised against an operation because of appellee's age. He concluded that claimant "is permanently disabled from ever performing anything that he is capable of doing," namely, manual labor. Only the lightest kind of labor, he said, is now within claimant's abilities.

Appellee was referred by the carrier to Dr. John Wideman, an orthopedic surgeon. The doctor saw appellee one time, not for the purpose of treatment but for evaluation. He concluded that appellee had a ten per cent permanent partial disability prior to the injury due to degenerative arthritis; and that as a result of this injury appellee's disability was increased to twenty-five per cent. He said the arthritis was accelerated by

the injury. He found appellee's right leg to be three-eights inch shorter than the left leg, some limitation of motion in the lower spine, difficulty in leaning to the left, and some limitation of forward motion. He concluded that claimant had a loss of sensation in the entire right leg "due to an emotional overlay." He concluded that claimant could not perform strenuous physical labor.

Dr. John Lohstoeter testified for appellants. He saw appellee for a period of thirteen months. Appellee's complaints were low back pain, right leg debilitation numbness, and radiational pain in the right leg complex. He did not consider appellee a malingerer. To him the claimant showed signs of a ruptured disc at the L-4 interspace. Radiation of pain was referable to the ruptured disc and claimant's acute pathological weakness was, in the doctor's opinion, likewise attributable to the disc problem. Over the thirteen months period claimant showed considerable improvement which Dr. Lohstoeter attributed to therapy and medications, together with the use of a prescribed back brace. The doctor's rating of disability was ten per cent to the body as a whole with reference to physical impairment. He concluded that the patient could do lighter forms of manual work but that he should not attempt heavy manual labor. For example, he said claimant could do lighter forms of janitorial work, absent heavier forms of reaching, pulling, and lifting. "The crux of the situaation is that this man is not trained for duties other than those in manual labor field, he is disabled from performing his usual tasks, is therefore disabled from gainful employment status. Because of his age group, it seems dubious that rehabilitative training programs could be established to grant this man large scale goal in the future."

The sole issue on appeal is whether there is substantial evidence to sustain the finding of a disability of seventy per cent to the body as a whole. Appellants contend that the highest percentage of disability justified by the evidence is ten per cent. We must give the evidence its strongest probative force in favor of the ac-

tion of the commission. We do not disturb the commission's findings if they are supported by substantial evidence.

We have examined the evidence in light of our holdings in *Glass* v. *Edens,* 233 Ark. 786, 346 S. W. 2d 685 (1961), and *Ray* v. *Shelnutt Nursing Home,* 246 Ark. 575, 439 S. W. 2d 41. Those are the only cases· cited by appellants. *Glass* v. *Edens* requires that, in addition to medical evidence, the commission consider evidence of appellant's age, education, experience, and other matters affecting wage loss. In *Shelnutt* we held that it was incumbent on the claimant to produce evidence of a substantial nature pertaining to claimant's ability or inability after the injury to earn "in the same or other employment, the wages she was receiving at the time of her injury."

Giving the evidence its strongest probative force in favor of the commission's findings, and weighed by the standards set in the two cited cases, we hold that the commission's· decision should be sustained as being supported by substantial evidence. It is undisputed that appellant had a second grade education; that he is untrained for any work requiring skill; that his life had been devoted exclusively to hard manual labor; that he was sixty-four years of age; and that he had drawn full-time wages for several years and uninterrupted by illness. After the injury his doctor tried without success to persuade the county to reinstate appellee in a job restricted to light labor. All of the doctors agreed that in the future appellee would be able to perform only light physical labor. There was evidence to the effect that appellee could no longer do any substantial reaching, pulling, and lifting. It was shown that appellee tried to again work at the job he held prior to the injury but that he could not hold up to it. Appellee asserted that the maximum work he had been able to perform after the injury was home gardening but that he would have to rest after approximately one hour, He insisted that "if I stand on concrete it kills my back." Apparently the commission was convinced that because of age, limited education, lack of training, and

physical disability, job opportunities for the claimant will now be scarce; and that he will never be in a position to earn a wage approaching more than thirty per cent of his prior average wage rate. There was substantial evidence to support those conclusions.

Affirmed.