Frank J. ROONEY and TRAVELERS
INSURANCE COMPANY *v.* Rubie CHARLES

77-300                                    560 S.W. 2d 797

Opinion delivered January 30, 1978
(Division II)

*Southern, Stewart, Gunter, Matthews & Alexander,* by: *Byron S. Southern,* for appellants.

*Brockman, Brockman & Gunti,* by: *David K. Gunti,* for appellee.

JOHN A. FOGLEMAN, Justice. Rubie Charles suffered a compensable injury while employed by appellant Frank J. Rooney as a construction laborer. His temporary total disability ended January 14, 1975. He was thereafter awarded compensation for permanent and total disability by an administrative law judge on July 23, 1976, after a hearing on February 13, 1976, and by the Arkansas Workmen's Compensation Commission on October 18, 1976. Medical

evidence showed a maximum 20% disability to the body as a whole, but the commission found Charles was permanently and totally disabled because his injury was sufficiently disabling to make his functional disability total. The award was affirmed by the circuit court on August 1, 1977. Appellants argue that there is no substantial evidence to support the award and that the commission erred in finding the claimant permanently and totally disabled on the basis of a non-compensable preexisting condition. We find no reversible error and affirm.

As in all cases on appellate review of a worker's compensation award, we view the evidence, about which there is little dispute, in the light most favorable to the commission's findings. It showed that:

Charles was 61 years of age at the time of his injury; he had worked only as a manual laborer; his formal education ended after he completed the third grade in school; he had a grade equivalency of first grade reading, being unable to recognize all letters or any words, of third grade in spelling, of beginning second grade in arithmetic; his visual acuity was poor; he was illiterate and possessed of insufficient reading or writing skills for utilization in a job requiring ability to make change or count; he had an intelligence quotient of 50, which was indicative of severe mental deficiency and a mental age of three years, ten months; his mental retardation was on two levels — one organic and the other psychosocial; he had no specific job skills which were transferable to another job; both his age and his intelligence rendered him non-feasible for rehabiliation; Charles was even unable to do chores around the house and he had to lie down a lot; in the opinion of a clinical psychologist, with experience as a rehabilitation counselor, even a minimally disabling injury to Charles' body as a whole results in a total functional disability, because he was precluded from heavy manual labor and his intellectual disabilities were such that he could not be placed in employment in light and sedentary areas.

Charles' treating physician had hoped to be able to return Charles to work, but was unable to say that he was

ever able to do more than light work, or any stooping or lifting of objects weighing more than 15 or 20 pounds. This physician was advised by Rooney's insurance carrier that there was no light work available for Charles.

Appellants rely to a great extent upon our decision in *Ray* v. *Shelnutt Nursing Home*, 246 Ark. 575, 439 S.W. 2d 41. They overlook the fact that in that case the claimant offered no testimony about her attempts to work or her ability or inability to work after her compensable injury and no testimony of a substantial nature, pertaining to her ability to earn in the same or other employment the wages she was receiving at the time of the injury. Significantly, however, we pointed out that the Workmen's Compensation Commission is in a better position to evaluate a claimant's ability to earn in the same or other employment the same wages he received at the time of a compensable injury. Furthermore, we said that, although the commission's knowledge and experience is not evidence, once it has before it firm medical evidence of physical impairment and functional limitations, it has the advantage of its own superior knowledge of industrial demands, limitations and requirements, and can apply its knowledge and experience in weighing the medical evidence of functional limitations together with other evidence of the manner in which the functional disability will affect the ability of an injured employee to obtain or hold a job and thereby arrive at a reasonably accurate conclusion as to the extent of permanent partial disability as related to the body as a whole.

The commission here did exactly what we said in *Ray* that it could do in evaluating the physical impairment of Charles, the functional limitations shown by medical evidence and other evidence of the manner in which his functional disability affected Charles' ability to obtain and hold a job.

We have long recognized that the wage-loss factor, i.e., the extent "to which a compensable injury has affected a claimant's ability to earn a livelihood," rather than the functional or anatomical loss, is generally controlling in disability determinations, which are to be made by the Workmen's Compensation Commission on the basis of medical evidence, age, education, experience and other matters reasonably ex-

pected to affect the claimant's earning power. See *Arkansas Best Freight System* v. *Brooks,* 244 Ark. 191, 424 S.W. 2d 377; *Glass* v. *Edens,* 233 Ark. 786, 346 S.W. 2d 685. A finding that Charles' age, education, permanent physical impairment, coupled with his total lack of adaptability to rehabilitation rendered him permanently and totally disabled had substantial evidentiary support. We pointed out in *Brooks* that one factor which may be considered by the commission was whether the injured claimant can be trained to perform other work. The fact that mental retardation limits the field for which a worker can be trained does not make a claimant any less entitled to have his own wage-loss factor, and not that of some more intelligent person, govern the determination of his disability. It is highly probable that Charles was never employed or employable except in heavy manual labor. It is clear from the medical testimony that Charles would likely have been able to continue in the same or similar employment doing heavy manual labor, had it not been for the injury he suffered. This case bears a much greater similarity to *Corbitt* v. *Mohawk Rubber Co.,* 256 Ark. 932, 511 S.W. 2d 184, where we affirmed a finding of permanent and total disability than it does to *Ray.* In *Corbitt,* mental retardation was one element considered as having a bearing on the disability determination.

   Appellants also argue that the major portion of the claimant's disability is attributable to a preexisting condition, i.e., mental retardation, which is not compensable and, therefore, evidence on the question of retardation should not have been considered in arriving at the amount of benefits due the claimant. Although we did consider this fact in *Corbitt,* it is not clear that this particular issue was before us. We cannot agree with appellants that the quotation from 2 Larson, The Law of Workmen's Compensation 54, 58, § 59, in *McDaniel* v. *Hilyard Building Co.,* 233 Ark. 142, 343 S.W. 2d 416, supports their position. That quotation has to do with the precipitation of disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, and states that apportionment is not applicable in such cases, or in any case in which the prior condition was not a disability in the compensation sense. The author continued by saying:

To be apportionable then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.

Charles' mental retardation had not independently produced any degree of disability before the accident. There is no evidence that it would have prevented him from pursuing his employment as a manual laborer after the date of the injury. Under these circumstances, we have rejected an argument somewhat similar to that of appellants' where the contention was made that the major part of the claimant's disability was attributable to his age. *M. D. Thompson & Son Co.* v. *McCuan,* 255 Ark. 762, 502 S.W. 2d 93. We have sustained a finding of partial disability where consideration was given to age, limited education and lack of training as factors. *Johnson County* v. *Timmons,* 249 Ark. 1106, 463 S.W. 2d 365. It seems reasonable that age and mentality should be considered in the same light in evaluating the question of disability. Disability in workmen's compensation cases is the "incapacity because of injury to earn in the same or any other employment, the wages which the employee was receiving at the time of the injury." Ark. Stat. Ann. § 81-1302 (e) (Repl. 1976).

Congenital mental deficiency does not affect a worker's entitlement to compensation, because compensation is based on previous earnings and earning capacity and is measured by loss of capacity due to the accident and not on mental condition, except in regard to earnings and earning capacity. *Belleville Brick & Tile Co.* v. *Industrial Commission,* 305 Ill. 577, 137 N.E. 401 (1922). But in determining the degree of disability as defined in our statute, the mentality of the claimant is material to the wage-loss factor because it is pertinent to the question of his ability to obtain work that he is capable of performing. *Eastern S.S. Lines, Inc.* v. *Monahan,* 110 F. 2d 840 (1 Cir., 1940).

The question of total disability turns upon a determination whether a workman, by reason of the disability resulting from his compensable injury, cannot perform work of the general character he was performing when injured, or any other work which one of his capabilities might be able to

learn to do. *Morrison-Knudson Construction Co.* v. *Industrial Commission,* 18 Utah 2d 390, 424 P. 2d 138 (1967). See also, Wright, Compensation for Loss of Earning Capacity, 18 Ark. L. Rev. 269, 280. As pointed out in *Morrison-Knudson,* one with a low intelligence quotient cannot be expected to learn a new trade or calling and thereafter sell his services in the open labor market as readily as a more gifted person might do; therefore, the mental capacity of the claimant is pertinent to the issue of total disability. Prof. Larson points out that a considerable number of the cases involving the oddlot doctrine (that total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market) are those of claimants whose adaptability to the new situation created by their physical injury was constricted by lack of mental capacity or education. 2 Larson, The Law of Workmen's Compensation, 10-122, § 57.51.

Under our definition of disability for workmen's compensation purposes, the determination of incapacity turns upon the wages the employee was receiving at the time of the injury. Unquestionably, Charles' wages at the time of injury were limited because of his mental retardation. If he was deprived by injury of his previous capacity to earn the same wages in the same or any other employment, he was disabled. If he was unable to earn any wages in any employment he was totally disabled for workmen's compensation purposes. There was substantial evidence to support the finding that Charles was totally and permanently disabled by his compensable injury.

The judgment is affirmed.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.