Gladys JOHNSON v. GENERAL DYNAMICS

CA 93-830                                        878 S.W.2d 411

Court of Appeals of Arkansas
En Banc
Opinion delivered June 22, 1994

*Blackman Law Firm*, by: *Keith Blackman*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Norwood Phillips*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's order affirming and adopting the administrative law judge's decision. The ALJ found that appellant had proven that she had sustained a compensable occupational disease which resulted in a period of temporary, total disability commencing on October 15, 1991, and extending until July 29, 1992; that appellant failed to prove that a violation of an Arkansas statute or official regulation caused in substantial part her occupational disease; and that appellant is not entitled to any permanent disability benefits. On appeal, appellant contends that she is entitled to permanent impairment benefits and wage loss disability benefits and that the Commission erred in failing to award benefits for violation of an Arkansas statute or official regulation. We reverse and remand in part, and affirm in part.

The record reflects that appellant had worked for appellee from September of 1975 until October of 1991, soldering computer component boards with the aid of a magnifying glass or microscope. The performance of this task produced fumes and smoke which were inhaled by appellant. Appellant began experiencing respiratory problems approximately six months prior to the time she quit work in October 1991. She sought medical treatment in August of 1991, and was diagnosed with obstructive pulmonary disease and hypertensive vascular disease. The Commission found that her condition was causally connected with her employment, and awarded appellant temporary total benefits. The Commission found, however, that appellant was not entitled to an award of permanent disability benefits. Appellant argues that there is no substantial evidence to support the Commission's denial of permanent disability benefits. The Commission found that appellant was not entitled to permanent anatom-

ical impairment benefits because the record did not contain a rating of permanent impairment. The Commission also concluded that appellant had suffered no wage loss disability as a result of her condition.

Appellant first argues that the Commission erred in finding that she had suffered no permanent, anatomical impairment as a result of her occupational disease. We agree. The dissent points out that appellant argues that she is permanently, totally disabled and not that she has "some degree" of permanent partial disability. However, it stands to reason that if one argues total disability a partial disability can be found in the alternative. *See* Cite.

Permanent impairment, which is usually a medical condition, is any permanent functional or anatomical loss remaining after the healing period has been reached. *Ouachita Marine* v. *Morrison*, 246 Ark. 882, 440 S.W.2d 216 (1969). An injured employee is entitled to the payment of compensation for the permanent functional or anatomical loss of use of the body as a whole whether his earning capacity is diminished or not. *Id.* In the case of *Wilson & Co.* v. *Christman*, 244 Ark. 132, 424 S.W.2d 863 (1968), the supreme court stated that the Commission is "not limited, and never has been limited, to medical evidence only in arriving at its decision as to the *amount* or *extent* of permanent partial disability suffered by an injured employee as a result of injury." In fact, it is the duty of the Workers' Compensation Commission to translate the evidence on all issues before it into findings of fact. *Gencorp Polymer Products* v. *Lander*, 36 Ark. App. 190, 820 S.W.2d 475 (1991). It has also been said that nothing in our law does or should require precise evidence of the precise amount of disability. *Bibler Bros.* v. *Ingram*, 266 Ark. 969, 587 S.W.2d 841 (1979). It appears that the court in *Bibler* was referring to anatomical impairment and/or wage loss disability.

After reviewing the record it is clear that the Commission denied appellant benefits for permanent, partial, *anatomical* loss of the use of her body for the sole reason that there was no numerical rating assigned by a physician. However, the record contains evidence from which reasonable minds could conclude that appellant sustained some degree of permanent impairment.

Appellant testified that six months before she had to

cease working, she had been very tired, and had experienced shortness of breath and constant pain in her chest. The record discloses that appellant visited Dr. Bill Dedman on August 21, 1991. Dr. Dedman performed a lung test and found that appellant had a decreased and abnormal lung capacity. Dr. Dedman testified that testing revealed that appellant had a decrease in lung capacity as much as 47 percent. He referred appellant to Dr. James Adamson. Appellant was seen by Dr. Adamson on September 26, 1991, at which time he expressed the view that appellant's decrease in lung volume was largely caused by chronic obstructive pulmonary disease. Dr. Adamson felt that appellant's condition was due from exposure to the smoke and fumes produced from her job.

The record further reveals that appellant was instructed to use inhalers to help her condition. Dr. Dedman stated that appellant's exercise tolerance had increased, but he felt that this was brought about by the use of inhalers. He also testified that, as with any type of lung disease, there was a good chance that appellant's condition would worsen over the progression of time. Dr. Dedman felt that appellant was permanently disabled as a result of her illness.

The record also discloses that appellant was unable to perform activities she once could because of her diminished breathing capacity. Dr. Dedman testified that appellant could not ambulate any significant distance without chest discomfort and shortness of breath. Dr. Dedman stated that he did not believe this condition would get any better. Appellant testified that she was able to garden, perform yard work, carpentry work, and farming before she had this condition. She stated that as a result of her illness she was not able to do her housework.

Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Johnson* v. *American Pulpwood Co.*, 38 Ark. App. 6, 826 S.W.2d 827 (1992). We will reverse a decision of the Commission where convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Wade* v. *Mr. C. Cavenaugh's*, 25 Ark. App.

237, 756 S.W.2d 923 (1988). Based on the facts in this case, we find that the opinion of the Commission fails to display a substantial basis for the denial of relief. We are not convinced that fair-minded persons with the same facts presented in this case could reach the same conclusion as the Commission. The Commission had before it cogent evidence presented by appellant which could support a finding of permanent, anatomical impairment, and we note that there was no evidence in the record to rebut this strong evidence. Therefore, we reverse and remand on this issue. On remand of this case, it will be the function of the Commission to translate the evidence presented them into findings of fact. The dissent mischaracterizes this holding as awarding the appellant "some degree" of permanent, partial disability. To the contrary, we are holding that appellant is entitled to some degree of permanent, partial, *anatomical* impairment disability. The determination of the precise degree of impairment is the Commission's duty to determine under the law; therefore, we remand.

Appellant also argues that there is no substantial evidence to support the Commission's denial of wage loss disability benefits. We disagree.

The wage loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Grimes* v. *North American Foundry*, 42 Ark. App. 137, 856 S.W.2d 309 (1993). Arkansas Code Annotated § 11-9-522(b) (1987) provides in part that if an employee, subsequent to her injury, "has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than her average weekly wage at the time of the accident", she shall not be entitled to wage loss disability benefits.

The Commission denied wage loss disability benefits based on evidence that the appellant had been offered employment within her restricted capacity.The Commission stated that a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than her average weekly wage at the time appellant last worked was tendered to her. Appellant contends that the work that was offered did not meet the work restrictions placed upon her by her doctors since she was still exposed to fumes at the plant.

Drs. Dedman and Adamson felt that appellant was

able to return to work. The record discloses that work limitations were placed on appellant's ability to perform a certain type of work. Dr. Dedman noted in a letter dated June 1, 1992, that appellant could continue to work in a sedentary position if the following conditions were met: 1. she is in a room where she is not exposed to solder fumes, 2. she should not be required to walk up stairs, 3. her maximum distance to walk at any time should not be more than 300 feet, 4. she should not be doing any significant repetitive lifting over 20 pounds, 5. she should not be in a position where she is having to do repetitive walking, bending or lifting, 6. she should not be in an area where she is required to wear a respiratory of any type. In a letter dated July 29, 1992, Mr. Norwood Phillips, stated that appellee had several positions open to appellant which comply with the restrictions placed upon her by Dr. Dedman. In that same letter, Mr. Phillips requested that appellant contact John McCroskey to get back to work. Appellant admitted that she was aware of the offer of employment, but she did not speak with Mr. McCroskey as requested. Mr. McCroskey testified that, had appellant reported back to work as scheduled, she would have earned the same wage that she was earning at the time of her departure.

After reviewing the evidence, we cannot say there is no substantial basis for the Commission's denial of wage loss benefits.

For her last point, appellant argues that the Commission erred in refusing to award benefits for a violation of an Arkansas statute or official regulation.

Arkansas Code Annotated § 11-9-503 (1987) provides that:

> Where established by clear and convincing evidence that an injury or a death is caused in substantial part by the failure of an employer to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees, compensation provided for by § 11-9-501(a)–(d) shall be increased by 25 percent.

Appellant argues that under Ark. Code Ann. § 11-2-117 (1987) every employer is required to furnish employment which is safe for the employees and that every employer shall furnish safety devices and safeguards. According to appellant, the warehouse

in which she worked was not ventilated and masks were not provided. Other co-workers also testified that they were not aware of any ventilation nor the availability of masks. However, the appellee's safety director testified that there was ventilation and that the air in the plant was checked according to OSHA standards and was below the safety level required.

The Commission found that there was nothing in the record to indicate that the appellant's occupational disease was caused by a violation of an Arkansas statute or official regulation. In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *CDI Contractors* v. *McHale*, 41 Ark. App. 57, 848 S.W.2d 941 (1993). Therefore, we cannot say that there is no substantial evidence to support the Commission's decision.

Reversed and remanded in part; affirmed in part.

JENNINGS, C.J., concurs in part, and dissents in part.

JOHN E. JENNINGS, Chief Judge, concurring in part, dissenting in part. The majority holds, as I understand it, that the Commission erred in not awarding to the appellant "some degree" of permanent partial disability. One problem with this holding is that this is not the appellant's contention. To the contrary, appellant argues that she "has proven that she is totally, permanently disabled." There is not the slightest suggestion by the appellant that the Commission, on its own, ought to have found "some degree" of permanent *partial* disability. The majority states that "it is clear that the Commission denied appellant benefits for permanent, partial anatomical, loss of the use of her body for the sole reason there was no numerical rating assigned by a physician." Even the appellant recognizes that this is not true:

> The Commission, in adopting the administrative law judge's decision, made the finding that the appellant was entitled to no permanent disability benefits for two reasons. First being that she was given no permanent partial physical impairment rating, and secondly, that the claimant was offered employment within her capacity, so that she would be limited to her anatomical impairment, pursuant to Ark. Code Ann. § 11-9-522(b). [Appellant's brief.]

The majority says, "The record contains evidence from which reasonable minds *could* conclude that appellant sustained *some* degree of permanent impairment." (Emphasis added.) While I do not disagree, this is not our standard of review and affords no basis for reversal.

Apart from the problem that the issue we reverse on is not urged by the appellant, none of the cases cited by the majority has any significant bearing on the case at bar. For instance the court in *Bibler Bros., Inc.* v. *Ingram*, 266 Ark. 969, 587 S.W.2d 841 (1979), says that nothing in the law requires precise evidence of the amount of "disability." The court clearly was referring to the combination of both anatomical disability and wage-loss disability. *See, generally, Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961); *Arkansas Best Freight* v. *Brooks*, 244 Ark. 191, 424 S.W.2d 377 (1968). In *Brooks* the court said:

> The pronouncement in *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), settled the law with reference to non-scheduled injuries. "Loss of the use of the body as a whole" involves two factors. The first is the functional or anatomical loss. *That percentage is fixed by medical evidence.* Secondly, there is the wage-loss factor, that is, the degree to which the injury has effected claimant's ability to earn a livelihood. [Emphasis added.]

In determining permanent partial disability, factors such as the claimant's age, education, experience, and other matters affecting wage-loss, must be considered along with the medical evidence. Ark. Code Ann. § 11-9-522 (Supp. 1993); *Glass* v. *Edens, supra.* This is the reason that the court in *Wilson* v. *Christman*, cited by the majority, stated that the Commission is not limited to medical evidence only in arriving at its decision on permanent partial disability.

The practical difficulties in remanding this case to the Commission with instructions to fix, on this evidence, a certain degree of permanent partial disability, are overwhelming. Any finding of fact the Commission makes will simply be a guess.

The case at bar is one of those unusual workers' compensation cases in which the principle of the burden of proof has some bearing. While I agree with the majority that there is evi-

dence that the appellant sustained some degree of permanent partial impairment, it was the claimant's burden to offer some evidence as to the degree of that impairment. It is roughly analogous to the burden of a plaintiff in a tort action to produce evidence of the amount of her damages. The jury, like the Commission here, cannot simply be left to speculate. *Mine Creek Contractors, Inc.* v. *Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989).

Finally, the majority agrees with the Commission that there was evidence to support the Commission's finding that had the appellant returned to work "she would have earned the same wage that she was earning at the time of her departure." Ark. Code Ann. § 11-9-522(b) provides that under such circumstances she "shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment *established by a preponderance of the medical testimony and evidence.*" (Emphasis added.) This was an alternative basis for the Commission's denial of permanent disability benefits and another reason why we err in reversing the decision in this case.

For the reasons stated, I respectfully dissent.