POLK COUNTY *v.* Carl JONES

CA 00-1195                                              47 S.W.3d 904

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered June 13, 2001

*Roberts, Roberts & Russell, P.A.*, by: *Mike Roberts* and *Ben Cormack*, for appellant.

*Walters, Hamby & Verkamp*, by: *Michael Hamby*, for appellee.

J OHN B. ROBBINS, Judge. On September 30, 1997, appellee Carl Jones sustained an injury to his head and neck when he fell forward into a large piece of timber while working for appellant Polk County. Polk County accepted his injuries as compensable, and paid all reasonable medical expenses as well as temporary total disability benefits. However, Polk County controverted Mr. Jones' claim that he was entitled to benefits for a permanent partial impairment. A hearing was held, and the only permanent partial impairment rating introduced into evidence was a ten-percent rating assigned by Dr. Thomas Florian. The Workers' Compensation Commission refused to consider the rating assigned by Dr. Florian because it was not supported by objective findings as required by Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 1996), and further because, in arriving at the rating, Dr. Florian considered complaints of pain in violation of Ark. Code Ann. § 11-9-102(16)(A)(ii) (Repl. 1996).[1] However, the Commission consulted the *AMI Guides* and determined that, based primarily on objective findings of disc herniations or bulges at the C3-C4, C4-C5, and C6-C7 levels, Mr. Jones was entitled to compensation for an eight-percent permanent-impairment rating. Polk County now appeals from this award.

For reversal, Polk County first argues that the Commission committed reversible error in independently assessing a permanent-impairment rating based on a document that was not in the record. Next, it contends that, even if the extrajudicial review of the AMA *Guides* was permissible, the eight-percent rating assigned by the Commission was not supported by substantial evidence. We affirm.

Mr. Jones testified on his own behalf at the hearing. He stated that, on September 30, 1997, he was loading timber into a truck at a lumber yard, and the next thing he remembered was waking up at the hospital. He was told that he had fallen and struck his head and was unconscious for more than four hours. Subsequent to the accident, Mr. Jones was treated by several doctors, and Dr. Florian found that he reached maximum medical improvement on October

---

[1] There is no dispute on appeal regarding the rating assigned by Dr. Florian. He correctly consulted the AMA *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) in arriving at the 10% aggregate rating. However, he assigned a 5% rating as a result of the neck injury based on "continuous muscle guarding" but "no evidence of radiculopathy and no loss of structural integrity," and the remaining 5% rating was for moderate to marked headaches. The Commission properly refused to accept the ratings offered by Dr. Florian because they were based on subjective criteria and not objective findings as mandated by the Workers' Compensation Act.

27, 1998. Mr. Jones was returned to work with restrictions on April 1, 1999.

A CT scan and myelogram were performed on January 21, 1999. Subsequent to the tests, Dr. J. Michael Standefer reported:

> Radiographic studies: Previous studies have been reviewed including the patient's recent myelogram and post myelogram CT scan, the results of which are basically normal. There is mild disc bulging at several levels, but this does not appear to be of any pathological significance. Degenerative change is modest.

However, Dr. Ismail H. Ihmeidan expressed a contrary view, noting small central disc herniations at the C3-C4, C4-C5, and C6-C7 levels. Dr. Robert Fisher reported, "The myelogram is interpreted as showing mild ventral indentation of the secal sac at CS-4, 4-5, and possibly C6-7." He further reported, "CT of the cervical spine in the post myelogram state was obtained and interpreted by Dr. Ihmeidan as 'small focal disc herniations at CS-4, 4-5, and C6-7.'"

In its opinion awarding the permanent impairment rating, the Commission reasoned:

> [T]he absence of any appropriate medically assessed degree of permanent physical impairment does not automatically preclude the claimant from being entitled to benefits for permanent physical impairment. Under the current Act, as amended by Act 796 of 1993, it is the duty and obligation of this Commission to determine the existence and appropriately assess the extent of permanent physical impairment, rather than the medical experts.

> The medical evidence does show the presence of "objective and measurable physical findings" sufficient to support the existence of permanent physical impairment. These findings are in the form of small central focal disc herniations or bulges at the levels of C3-4, C4-5, and C6-7 with mild ventral indention of the thecal sack. These findings are noted on the myelogram and post CT myelogram performed on January 21, 1999.

> The American Medical Association's *Guides to the Evaluation of Permanent Impairment* (Fourth Edition), provide a method for the assessment of a specific percentage or degree of permanent physical impairment based solely upon these objective and measurable physical findings. Table 75, Section II. C. and E. on page 113 provides for a permanent physical impairment of 8% to the body as a whole

for the observed findings of unoperated herniated discs at multiple levels.

Polk County's first point on appeal is that the Commission went beyond the scope of its statutory powers when it engaged in extrajudicial review of a document neither included nor referenced in the record. It is undisputed that the section of the AMA *Guides* relied on by the Commission was not introduced into evidence by either party.

The appellant cites Ark. Code Ann. § 11-9-704(c)(2) (Repl. 1996), which provides, "When deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence." It also cites Ark. Code Ann. § 11-9-711(b)(4)(A) (1996), which gives this court the authority to reverse the Commission's decision if the Commission acted without or in excess of its powers. Arkansas Code Annotated section 11-9-704(c)(3) (Repl. 1996) provides that, "Administrative Law Judges, the Commission, and any reviewing court shall construe the provisions of this chapter strictly." The appellant submits that, construing the statutes strictly, we must reverse the Commission's decision because it was not based on the record as a whole, and because the Commission exceeded its authority in going beyond the record.

The Commission correctly stated in its opinion that the AMA *Guides* must be used in assessing an anatomical impairment. *See* Ark. Code Ann. § 11-9-522(g)(1)(A) (Repl. 1996); Arkansas Workers' Compensation Rule 34. However, in the instant case, the section of the AMA *Guides* upon which the Commission relied in assessing an anatomical-impairment rating was not part of the record, and was not referenced in any of the medical opinions. Notwithstanding this fact, we hold that the Commission did not err in relying on the AMA *Guides*.

In arriving at our decision, we are cognizant of the precedent we set in *Hope Livestock Auction Co. v. Knighton*, 62 Ark. App. 74, 966 S.W.2d 943 (1998). In that case, the claimant sought benefits for a bipolar disorder and thus was required to comply with Ark. Code Ann. § 11-9-113(2) (Repl. 1996), which provides:

No mental injury or illness under this section shall be compensable unless it is also diagnosed by a licensed psychiatrist or psychologist

and unless the diagnosis of the condition meets the criteria established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders.

In its opinion awarding benefits for the mental illness, the Commission stated:

> [A]lthough the psychiatrist never testified claimant's diagnosis of bipolar specifically meets the Diagnostic and Statistical Manual of Mental Disorders, when we review this manual we find that the diagnosis of bipolar I disorder satisfies this statutory requirement.

However, we reversed, announcing:

> The Commission's *de novo* review is confined to the record established by the ALJ. The extrajudicial review of documentation not introduced into evidence was error. We reverse and remand for further findings.

62 Ark. App. at 78, 966 S.W.2d at 946.

■ ■ We now overrule *Hope Livestock Auction Co. v. Knighton, supra*, to the extent that it prohibits the Commission from referring to a manual that is not in the record when by law the manual must be consulted to decide an issue in dispute. The Workers' Compensation Act of 1993 directed the Commission to adopt an impairment-rating guide to be used in the assessment of anatomical impairment, and the Commission adopted the AMA *Guides*. Thus, in all cases where entitlement to a permanent impairment is sought by the claimant but controverted by the employer, it is the Commission's duty to determine, using the AMA *Guides*, whether the claimant met his burden of proof. This being the case, we hold that the Commission can, and indeed, should, consult the AMA *Guides* when determining the existence and extent of permanent impairment, whether or not the relevant portions of the *Guides* have been offered into evidence by either party.

■ Polk County also contends that the Commission exceeded the scope of its authority when it assessed its own impairment rating rather than relying solely on its determination of the validity of ratings assigned by physicians. We disagree. It is the duty of the Commission to translate evidence into findings of fact. *Johnson v. General Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994). In the instant case, the Commission was authorized to decide which portions of the medical evidence to credit, and translate this medical

evidence into a finding of permanent impairment using the AMA *Guides*.

Polk Country's remaining argument is that, even if the Commission was authorized to consult the AMA *Guides*, substantial evidence does not support its assignment of an eight-percent permanent-impairment rating. It notes that there were conflicting medical opinions as to the existence of herniated discs, and submits that there was no medical opinion stated within a reasonable degree of medical certainty as required by Ark. Code Ann. § 11-9-102(16)(B) (Repl. 1996). Polk County further asserts that Mr. Jones failed to establish that his compensable injury was the major cause of his impairment as required by Ark. Code Ann. § 11-9-102(5)(F)(ii)(a) (Repl. 1997). Finally, appellant contends that, even if a permanent impairment raring was warranted, the Commission erred in awarding an eight-percent rating instead of a six-percent rating.

■ Polk County's remaining argument is without merit. It correctly asserts that an award by the Commission will not be affirmed on appeal unless it is supported by substantial evidence. *See Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998). However, we find that substantial evidence supports the Commission's ruling.

■ While there was conflicting medical evidence in this case, it is well settled that it is the Commission's duty to resolve such conflicts. *See Inskeep v. Emerson Elec. Co.*, 64 Ark. App. 101, 983 S.W.2d 132 (1998); *Chamberlain Group v. Rios*, 45 Ark. App. 144, 871 S.W.2d 595 (1994). Dr. Ihmeidan diagnosed disc herniations at three levels, and the Commission was free to give weight to his opinion. While it is true that medical opinions addressing permanent impairment must be stated within a reasonable degree of medical certainty, Dr. Ihmeidan's opinion met this requirement in that he was not equivocal in his assessment of permanent impairment in the form of herniations.

■ We also reject appellant's contention that Mr. Jones failed to prove that his compensable injury was the major cause of his impairment. As the Commission correctly noted, there was not evidence as to any other possible causes for the herniations, and no evidence that Mr. Jones experienced any significant neck problems prior to the work-related accident. Thus, the Commission did not err in finding that Mr. Jones satisfied the "major cause" requirement.

■ Finally, we find that the eight-percent rating arrived at by the Commission is supported by substantial evidence. The Commission based this award on an excerpt from page 113 of the AMA *Guides*, where it indicates that three-level, unoperated-on disc lesions constitute an eight-percent impairment when associated with moderate to severe degenerative changes. The appellant urges that, at most, the *Guides* authorize a six-percent rating because Mr. Jones' degenerative changes were none to minimal. Mr. Jones was diagnosed with "modest" degenerative changes, and this supports the rating assigned by the Commission.

Affirmed.

STROUD, C.J., HART, JENNINGS, CRABTREE, and BAKER, JJ., agree.