Mary K. JONES *v.* WAL-MART STORES, INC.
and Claims Management, Inc.

CA 07-37                                                     262 S.W.3d 630

Court of Appeals of Arkansas
Opinion delivered September 19, 2007

*Harrelson Moore & Giles*, by: *Gregory Ross Giles*, for appellant.

*Bassett Law Firm, LLP*, by: *Tod C. Bassett*, for appellee.

KAREN R. BAKER, Judge. Appellant, Mary K. Jones, appeals the decision of the Workers' Compensation Commission finding that she failed to prove by a preponderance of the evidence both that she is entitled to permanent disability benefits and that additional medical treatment was reasonably necessary in connection with the compensable injury. She has two arguments on appeal. First, she asserts that the Commission erred both as a matter of law and in its interpretation of the evidence when it denied her permanent disability benefits because she had no doctor's opinion assigning her an impairment rating. Second, she asserts that the Commission erred in concluding that she is not entitled to further medical treatment. We affirm in part and reverse and remand in part.

Appellant was employed as a sales clerk at Wal-Mart in Ashdown when she sustained a compensable injury to her back after falling between two-and-one-half and three feet from a ladder on July 13, 2002. After her fall, appellant went to the emergency room complaining of an injury to her back and neck. At the emergency room, Dr. Kleinschmidt examined her. Following his examination, his written instructions included specific steps in caring for her wounds, her sprain and fracture, and her neck and back injury. She was instructed to rest and to take her medication as directed. She returned to Dr. Kleinschmidt for a follow-up visit on July 24, 2002, and he recommended physical therapy. Appellant attempted physical therapy; however, she testified that she did not continue with physical therapy due to the increased pain in her back. She saw Dr. Kleinschmidt again on July 31, 2002. He recommended an MRI of her lumbar spine. He also recommended that she remain off work for two weeks.

On August 7, 2002, at the request of Wal-Mart's workers' compensation representative, appellant had an appointment to see Dr. Gabbie. She was not examined by Dr. Gabbie; rather, she was examined by Norman Herbert, Dr. Gabbie's physician assistant.

Herbert listed appellant's diagnosis as L-5 strain, prescribed medications, and recommended "work hardening" physical therapy. Herbert released her to go back to work with light-duty restrictions. Appellant did not return to work, and she was ultimately terminated by her employer. Appellant testified that she did not return to work because she was unable to perform even the light-duty work suggested by Herbert due to constant back pain.

It was not until September 2002 that appellant underwent the MRI ordered by Dr. Kleinschmidt. The MRI of the thoracic spine indicated moderate central bulging at T6-7, and the MRI of the lumbar spine indicated a ten centimeter irregular area of fluid within the adipose tissue posterior to L1 through L3.

Appellant saw Dr. Weems, an orthopedic doctor, on January 29, 2003, and for a follow-up visit on February 26, 2003. After her initial visit, Dr. Weems, noting that he did not have the MRI films or records to review, assessed appellant with "what sounds like chronic thoracic and lumbar back strain" and recommended therapy to provide appellant with symptomatic relief. At her follow-up visit, Dr. Weems explained to appellant that he had reviewed her MRI results and that the MRI only showed a bulging disc in the thoracic spine "which was not causing any significant foraminal or spinal stenosis" and a contusion in the soft tissue in the lumbar region. He told her that the only way she would improve would be to go to physical therapy; however, appellant explained that physical therapy was too painful and that she would not go.

Appellant contends that she has numerous injuries as a result of her July 13, 2002 fall and that she has seen various other doctors as a result. She testified that in addition to a fractured neck, diagnosed by Dr. Kleinschmidt, she has a fractured coccyx and a fractured tailbone. She testified that she has a loss of vision from fluid in her head, neck, and behind her eyes, as well as a pseudotumor, migraine headaches, and paralysis of the face. Appellant saw Dr. Vora on June 28, 2004, and Dr. Vora's notes indicated that he explained to appellant that he would need to begin her evaluation with MRIs in order to determine how to treat her back pain. When the two discussed medication, appellant requested narcotics; however, Dr. Vora refused to prescribe narcotics to her. When he told appellant that a pseudotumor was not likely to be a secondary injury to a neck and back injury, appellant "did not like it and at that point she took all her papers" and decided not to go back there. When she saw Dr. Rutherford, she explained her other

injuries to him, such as an ovarian cyst, a pseudotumor, hypertension, exacerbation of asthma, and swelling of her left knee, all of which she thought were the result of her fall at work; however, Dr. Rutherford did not agree that all of these conditions were a result of her fall. He stated specifically that "[c]ertainly there would be no causal relationship between pseudotumor, asthma or complex ovarian cyst." Dr. Rutherford suggested an additional MRI of the thoracic spine; however, appellant initially declined the MRI. Once appellant decided to have the MRI in January 2006, it showed little if any change.

The Administrative Law Judge determined that appellant was not entitled to permanent disability benefits or wage-loss benefits in the absence of a physician's report assigning a permanent impairment rating. The Administrative Law Judge also determined that since there were no treatment recommendations outstanding and it appeared that all previously suggested treatment options had been exhausted, that appellant failed to prove by a preponderance of the evidence that additional medical treatment was reasonably necessary. The Commission affirmed the decision of the Administrative Law Judge. From that decision, comes this appeal.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Liaromatis v. Baxter County Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 524 (2006) (citing *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Crossett Sch. Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995)). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996). The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Keller v. L.A. Darling Fixtures*, 40 Ark. App. 94, 845 S.W.2d 15 (1992).

The Commission also has the duty of weighing the medical evidence as it does any other evidence. *Liaromatis,* 95 Ark. App. at 298, 236 S.W.3d at 526 (citing *Roberson v. Waste Mgmt.,* 58 Ark. App. 11, 944 S.W.2d 858 (1997)). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall,* 79 Ark. App. 129, 84 S.W.3d 878 (2002). When the Commission denies benefits upon finding that the claimant failed to meet his burden of proof, the substantial evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for relief. *Cooper v. Hiland Dairy,* 69 Ark. App. 200, 11 S.W.3d 5 (2000). In addition, the Commission cannot arbitrarily disregard any witness's testimony. *Freeman v. Con-Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001).

For her first point on appeal, appellant argues that the Commission erred both as a matter of law and in its interpretation of the evidence when it denied her permanent disability benefits because she had no doctor's opinion assigning her an impairment rating. In her brief, she asserts that the Commission erred when it failed to assign a percentage impairment rating, where there was no impairment rating provided by a doctor. The precise issue presented in this case is whether the Commission has the authority to assess its own impairment rating in the absence of a physician-assigned impairment rating.

The ALJ found that in the absence of a physician's report assigning a permanent impairment rating, appellant was not entitled to permanent disability benefits. In so holding, the ALJ relied upon the case of *Wren v. Sanders Plumbing Supply,* 83 Ark. App. 111, 116 S.W.3d 461 (2003). However, in *Wren,* this court held only that Mr. Wren was not entitled to permanent disability benefits because there was no evidence of a permanent physical impairment. In *Johnson v. General Dynamics,* 46 Ark. App. 188, 878 S.W.2d 411 (1994), this court remanded on a similar issue where the Commission failed to translate the evidence into a finding of whether the claimant proved entitlement to a rating, when it had cogent evidence before it that could support a finding of permanent, anatomical impairment.

In *Johnson v. General Dynamics,* 46 Ark. App. 188, 192, 878 S.W.2d 411, 412-13 (1994), we explained:

> Permanent impairment, which is usually a medical condition, is any permanent functional or anatomical loss remaining after the healing

period has been reached. *Ouachita Marine v. Morrison,* 246 Ark. 882, 440 S.W.2d 216 (1969). An injured employee is entitled to the payment of compensation for the permanent functional or anatomical loss of use of the body as a whole whether his earning capacity is diminished or not. *Id.* In the case of *Wilson & Co. v. Christman,* 244 Ark. 132, 424 S.W.2d 863 (1968), the supreme court stated that the Commission is "not limited, and never has been limited, to medical evidence only in arriving at its decision as to the *amount* or *extent* of permanent partial disability suffered by an injured employee as a result of injury." In fact, it is the duty of the Workers' Compensation Commission to translate the evidence on all issues before it into findings of fact. *Gencorp Polymer Products v. Landers,* 36 Ark. App. 190, 820 S.W.2d 475 (1991). It has also been said that nothing in our law does or should require precise evidence of the precise amount of disability. *Bibler Bros. v. Ingram,* 266 Ark. 969, 587 S.W.2d 841 (1979). It appears that the court in *Bibler* was referring to anatomical impairment and/or wage loss disability.

After reviewing the record it is clear that the Commission denied appellant benefits for permanent, partial, *anatomical* loss of the use of her body for the sole reason that there was no numerical rating assigned by a physician. However, the record contains evidence from which reasonable minds could conclude that appellant sustained some degree of permanent impairment.

Relying on *Johnson,* this court held in *Polk County v. Jones,* 74 Ark. App. 159, 47 S.W.3d 904 (2001), that the Commission was authorized to assess its own impairment rating rather than rely solely on its determination of the validity of ratings assigned by physicians. Specifically, this court in *Polk County* stated that:

The Workers' Compensation Act of 1993 directed the Commission to adopt an impairment-rating guide to be used in the assessment of anatomical impairment, and the Commission adopted the AMA *Guides.* Thus, in all cases where entitlement to a permanent impairment is sought by the claimant but controverted by the employer, it is the Commission's duty to determine, using the AMA *Guides,* whether the claimant met his burden of proof. This being the case, we hold that the Commission can, and indeed, should, consult the AMA *Guides* when determining the existence and extent of permanent impairment, whether or not the relevant portions of the *Guides* have been offered into evidence by either party.

Polk County also contends that the Commission exceeded the scope of its authority when it assessed its own impairment rating rather than relying solely on its determination of the validity of ratings assigned by physicians. We disagree. It is the duty of the Commission to translate evidence into findings of fact. *Johnson v. General Dynamics,* 46 Ark. App. 188, 878 S.W.2d 411 (1994). In the instant case, the Commission was authorized to decide which portions of the medical evidence to credit, and translate this medical evidence into a finding of permanent impairment using the AMA *Guides.*

*Polk County,* 74 Ark. App. at 164-65, 47 S.W.3d at 907-08.

■ In this case, as in *Johnson* and *Polk County,* the Commission was authorized to decide which portions of the medical evidence to credit and translate the medical evidence into a finding using the AMA *Guides,* as to whether the claimant met her burden of proof. Because the Commission denied appellant benefits solely because there was no impairment rating assigned by a physician, we reverse and remand for the Commission to determine whether appellant proved the existence and extent of a permanent impairment.

For her second point on appeal, appellant argues that the Commission erred in concluding that she is not entitled to further medical treatment. Our workers' compensation law provides that an employer shall provide the medical services that are reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Supp. 2007); *Fayetteville Sch. Dist. v. Kunzelman,* 93 Ark. App. 160, 217 S.W.3d 149 (2005). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Kunzelman, supra.* What constitutes reasonably necessary medical treatment is a question to be determined by the Commission. *White Consolidated Indus. v. Galloway,* 74 Ark. App. 13, 45 S.W.3d 396 (2001) (citing *Gansky v. Hi Tech Engineering,* 325 Ark. 163, 924 S.W.2d 790 (1996)).

■ In this case, appellant was examined by various physicians, none of whom recommended any future treatment options other than physical therapy. Although both Dr. Kleinschmidt and Dr. Weems initially recommended physical therapy for appellant, appellant refused to participate in the recommended therapy because she found it too painful. On these facts, we find that

substantial evidence supports the Commission's decision that appellant was not entitled to additional medical treatment.

For the reasons stated above, we affirm the Commission's decision that appellant did not prove entitlement to additional medical treatment; however, we reverse and remand for the Commission to determine whether appellant proved the existence and extent of a permanent impairment.

Affirmed in part; reversed and remanded in part.

ROBBINS and GLOVER, JJ., agree.