2009 Ark. App. 789

**Debra DICK, Appellant,**

v.

**CONLEY TRANSPORT and Virginia Surety Co., Appellees.**

**No. CA 09–457.**

Court of Appeals of Arkansas.

Nov. 18, 2009.

---

Tolley & Brooks, P.A., by: Evelyn E. Brooks, Fayetteville, for appellant.

Walmsley Law Firm, by: Bill H. Walmsley; Murphy, Thompson, Arnold, Skinner & Castleberry, by: Casey Castleberry, Batesville, for appellees.

KAREN R. BAKER, Judge.

Appellant Debra Dick appeals the Workers' Compensation Commission's denial of benefits, asserting that the Commission erred in finding that she failed to prove that she is entitled to both medical treatment in the form of an MRI for her compensable injury and temporary total disability benefits from May 8, 2007, to a date yet to be determined. We find merit to her argument and reverse and remand for the Commission to enter a decision consistent with this opinion.

A series of disputes regarding the appropriate benefits in this case has resulted in three hearings before the Commission. The process began on September 3, 2000, when appellant sustained an admittedly compensable injury while working for appellant Conley Transport as an over-the-road truck driver. She slipped and fell backward while getting out of her truck, causing her to fall to the ground. A cervical strain was ultimately diagnosed and, when her problems continued, an MRI was ordered.

This first MRI was performed on September 13, 2000, and revealed the following conditions that x-rays did not show:

Dorsal protrusion of the disc material C5–6, leading to flattening and indentation of the thecal sac with slight flattening and dorsal displacement of the cord.

Cervical kyphosis C5–6. Mild disc bulge C4–5.

Appellant received treatment for her injuries. Then in February of 2001, at appellees Conley and Virginia Surety Co.'s direction, appellant came under the care of Dr. James Blankenship, a neurosurgeon. Dr. Blankenship advised surgery as one medical treatment for appellant's injury; however, appellant and her other medical providers entered a more conservative treatment plan consisting of medication and physical therapy. When the conservative treatment failed to alleviate appellant's problems from the injury, appellant returned to Dr. Blankenship, who again recommended surgery for the herniated disc at C5–6 that was revealed in the earlier MRI. However, Dr. Blankenship wanted to obtain an additional MRI prior to performing the surgery. In reviewing the subsequent MRI, Dr. Blankenship opined that the MRI confirmed "a rather significant disc disruption at C5–6 with forward angulation at that level." He continued with his evaluation that appellant's problems were caused by a left C6 radiculopathy and offered to perform a C5–6 anterior cervical discectomy and fusion. Again, the MRI showed more detail regarding the extent of appellant's injury than the x-rays.

On November 11, 2002, the first hearing litigating the extent of benefits was held. An Administrative Law Judge (ALJ) found that appellant continued to suffer from problems that were causally related to her compensable injury and for which medical treatment remained reasonable and necessary. He also found that while she was authorized to receive continued treatment from Dr. Knox, she was not entitled to a requested additional MRI or temporary total disability. In December 2004, Dr. Greenberg performed the surgery, initially identified as appropriate

treatment by Dr. Blankenship in 2001, to correct a ruptured disc at the C5–6 level.

A second hearing regarding benefits was held on June 28, 2006. As a result of that hearing, an ALJ found appellant was entitled to another surgery at the C4–5 level occurring as a result of the original injury as additional ruptures are common below or above the sites of the surgical fusions. This surgery was performed by Dr. Greenberg in January 2007. The ALJ also found appellant was entitled to additional total temporary disability (TTD) from the date the surgeon said she re-entered her healing period, August 20, 2005, to a date yet to be determined. The Commission adopted the ALJ's findings and conclusions on October 16, 2006.

The most recent hearing regarding appellant's benefits was held on February 12, 2008. The issue was whether additional medical treatment, in the form of an MRI recommended by Dr. Greenberg, was reasonable and necessary, and whether she was entitled to additional TTD from May 8, 2007, to a date yet to be determined. The ALJ found that appellant had not proven that she was entitled to either. He also found that appellees had erroneously overpaid interest on the earlier award as attorney's fees and credited them with $160.63, and he found that appellant was entitled to a controverted attorney's fee on the underpayment of TTD benefits from January 23, 2007, through May 7, 2007. The issue of an attorney's fee was reserved. On January 6, 2009, the Commission's order adopting the ALJ opinion was filed. Appellant timely filed her notice of appeal.

The ALJ relied on x-rays taken on February 7 and May 7, 2007, to show cervical fusions as stable. The ALJ concluded that the recommendation of Dr. Greenberg, who performed the fusions, that appellant remain off work for three months after those x-rays showed stability, was not explained in the medical records with the exception of his observation that her recovery was still occurring "slowly but steadily." Based upon this observation, the ALJ declared that "under the law" appellant had reached the end of her healing period.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Jones v. Wal-Mart Stores, Inc.*, 100 Ark.App. 17, 262 S.W.3d 630 (2007). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.* The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Id.*

The Commission also has the duty of weighing the medical evidence as it does any other evidence. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Id.* When the Commission denies benefits upon finding that the claimant failed to meet his burden of proof, the substantial evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for relief. *Id.*

First and foremost, the ALJ's summation that either continued improvement

at a slow and steady rate or an x-ray report showing stabilization of a surgical fusion means that appellant has reached "the end of her healing period under the law" is a misstatement of the law. This court previously rejected the premise that a medical opinion identifying an anticipated healing process satisfies the law's requirement for medical evidence of maximum medical improvement sufficient to support the Commission's finding that an injured employee has reached the end of his or her healing period:

On appeal to this court, appellees argue that the Commission properly inferred from Dr. Bryan's constructive release of appellant that she had reached the end of her healing period, or that it was imminent, when he saw her on August 14, 2001. Appellees cite no law supporting the premise that our statutory or case law regarding the provision of workers' compensation benefits recognizes the constructive release of a patient or the inference from such a release that the patient has reached the end of her healing period. Perhaps one practical effect of a failure to timely pay outstanding |₆medical bills could be a delay in obtaining the statutorily required medical opinion identifying the date of maximum medical improvement and assigning an impairment rating.

Nevertheless, our review of the workers' compensation statutes and their interpretation by case law leads us to reject any suggestion that a party may prove or disprove the end of a healing period through a constructive release of a patient. Section 11–9–102(16)(B) of Arkansas Code Annotated (Repl.2002) provides that medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty. The legislative declaration found in section 11–9–1001 admonishes that any liberalization or broadening or narrowing of the extent to which any physical condition or injury should be excluded from or added to coverage by the law is the sole province of the Arkansas legislature.

*Bingle v. Quality Inn,* 96 Ark.App. 312, 317–18, 241 S.W.3d 271, 275–76 (2006).

In this case, the Commission rejected Dr. Greenberg's medical opinion that appellant was medically improving "slowly but steadily" and also rejected his opinion that the "setback" in her recovery could be related to either an additional injury not uncommonly associated with cervical fusions or a problem with the surgical fusion not identifiable in the x-rays. Dr. Greenberg's desire to perform the MRI was directly related to diagnosing the cause of appellant's continued healing process following surgery. The medical evidence relied on by the Commission to deny benefits was an x-ray report noting that the fusion "is stabilized by anterior fusion plate ... fusion hardware is stable ... remote C5–6 fusion appears stable with slight fragmentation...." The Commission's reliance on this evidence is factually inconsistent with the fact that previous x-rays failed to show damage as subsequently identified by previous MRI diagnostics. The MRI images more fully depicted the extent of appellant's injuries, which ultimately led to her surgeries. More significantly, an x-ray report does not|₇equate to a medical opinion regarding the status of an individual's healing period. The Commission merely substituted its own opinion that the x-ray denoted maximum medical improvement for the opinion of appellant's attending surgeon. Dr. Greenberg explained that appellant's condition indicated that there could be a problem with either the surgical repair or an additional disc rupture commonly associated with increased pressure on the adjacent discs arising from the fu-

sion repair. The uncertainty of the cause of appellant's condition required further and more appropriate diagnostic testing.

The Commission's opinion was that appellant's condition was unchanged because her February 7, 2007 x-rays, compared with x-rays taken on May 7, 2007, reflected that the fusion and the hardware securing the fusion appeared unchanged. The Commission concluded that as a matter of law the appearance of unchanged fusions rendered her at the end of her healing period. The conclusion is not supported by the evidence. Furthermore, this court's admonition in *Bingle* that neither the Commission nor this court has the authority to extend or limit coverage by finding a constructive release because the employee was stable and steadily improving is equally applicable here. Without this authority, the Commission cannot substitute the medical opinion that appellant was slowly but steadily continuing her healing process with its own finding that she "had reached the end of her healing period under the law" based upon an x-ray reading that the hardware and fusion appeared stable compared to a previous x-ray. No medical opinion in the record provides that appellant had reached maximum medical improvement within a reasonable degree of medical certainty. |₈Accordingly, we must reverse and remand on that issue.

The ALJ dismissed appellant's request for the diagnostic test of an MRI saying that nothing connected the potential C3–4 problem to the compensable injury, which therefore "would require that I engage in speculation and conjecture which I am not permitted to do." The Commission adopted the findings of the ALJ and the assessment that appellant had reached the end of her healing period to deny further treatment in the form of a diagnostic MRI. Appellant was doing well after surgery, with the treating doctor saying she "should" be recovered in a short period of time; however, she unexpectedly reported significant pain. Appellant's treating physician wanted an MRI to "rule out additional" problems and to make sure that the surgical fusion of appellant's neck was holding. If the surgical fusion to the admittedly compensable neck injury required additional treatment, it undoubtedly arose from the compensable injury. In addition, testimony of Dr. Greenberg explained that it is not uncommon that a cervical spine fusion creates added pressure above and below the fused discs, creating a substantially higher risk of disc herniation or similar injury at adjacent disc levels. Therefore, the Commission erred in denying the MRI to determine whether appellant's sudden setback was attributable to either a failure of the surgical fusion performed to address the admittedly compensable injury or perhaps due to added pressure from the cervical spine fusion.

Accordingly, we reverse and remand.

KINARD, J., agrees.

PITTMAN, J., concurs.