WAYMOND M. BROWN, Judge
Appellants ABF Freight System, Inc. (ABF), and ArcBest Corporation (ArcBest), employer and third-party administrator, respectively, appeal from the Arkansas Workers' Compensation Commission's (Commission) opinion affirming and adopting the administrative law judge's (ALJ) opinion finding ABF responsible for medical care appellee Byron Dugger received in 2015, following his 2004 compensable injury. The appellants' sole argument on appeal is that the Commission erred in awarding appellee his expenses for medical treatment that was not authorized because appellee failed to meet the mandatory preauthorization requirement of Commission Rule 30. We reverse.
Appellee suffered a compensable injury to his back on June 28, 2004. He was treated by Dr. John Wilson, whose treatment included surgery. Appellee reached maximum medical improvement on February 16, 2005, though he remained under Dr. Wilson's care. A permanent total disability finding was accepted, for which appellee receives permanent indemnity benefits. The costs of appellee's medical care through the surgery was paid for by appellants.
In 2015, appellee contacted Dr. Wilson when he again began to experience back pain. Dr. Wilson advised appellee that he had retired, referring appellee to his former partner, Dr. Kathryn McCarthy. Dr. McCarthy subsequently took over appellee's *672 treatment, performing surgery on appellee on April 13, 2015. Appellee's medical bills arising from the treatment were paid by Medicare. ArcBest was notified by letter from the Centers for Medicare and Medicaid Services (CMMS) on April 13, 2017, of CMMS's belief that ArcBest owed it $ 21,332.86 for conditional payments it made on appellee's behalf for which ArcBest had "primary payment responsibility[.]" CMMS notified appellee, by letter dated April 20, 2017, of its attempt to recover said conditional payments from ArcBest, attaching a copy of its April 13, 2017 letter to ArcBest thereto. Appellee was advised that he need not take any action at that time. At some point, appellants contested the payments and appellee obtained an attorney, though neither date is clear from the record.
According to the January 10, 2018 prehearing order, the issues to be adjudicated were whether appellee received a valid referral from Dr. Wilson to Dr. McCarthy and whether the treatment appellee received from Dr. McCarthy was "the result of a valid referral, was authorized, and was reasonably necessary in relation to [appellee's] compensable injury." That an employee/employer relationship existed at the time of injury; that appellee sustained a compensable lumbar injury on June 28, 2004; that appellee's healing period ended on or about February 16, 2005; and that appellee was permanently and totally disabled and presently receiving permanent indemnity benefits from ArcBest was stipulated to.
A hearing was held on February 28, 2018. Appellee, who was sixty-nine years old at the time of the hearing, testified that he was treated by Dr. Wilson who performed an L4-5 decompression surgery and an L5-S1 fusion surgery. Dr. Wilson told appellee the "surgery would last 10-15 years if [appellee] took real good care of [his] back, so [he] tried to follow those instructions." He saw Dr. McCarthy for the first time in March 2015. He had been referred to her by Dr. Wilson after he informed appellee that he had retired. Appellee denied that he had hurt his back in the interim between his surgery by Dr. Wilson and his referral to Dr. McCarthy.
Appellee gave Dr. McCarthy his insurance information-Medicare and Physician's Mutual-and advised that he had "had two prior surgeries and [he] worked for ABF" when asked how he hurt his back. When asked if ABF had workers' compensation insurance, he said yes. Dr. McCarthy later performed an L4-5 fusion surgery in April 2015.
When appellee "realized [he] needed help, [he] needed a doctor," he contacted Dr. Wilson. He "did not feel like" he needed to get a change of physician "because [he] had communicated with Dr. Wilson and gotten a referral[.]" It had been "quite a while" since appellee last saw Dr. McCarthy as he "[felt] like [he had] recovered from the surgery" though he "still had ongoing problems with [his] back." He manages said unidentified problems with over-the-counter medications.
Appellee had not spoken with anyone at ABF since 2005 and went "many years" without communicating to Dr. Wilson "because [he] didn't need anything." Furthermore, "[s]ince the beginning, first injury, [he had] never contacted ABF when [he] needed a doctor." Appellee had not contacted ABF in 2015 when he contacted Dr. Wilson. Neither he nor his attorney had asked ABF or the Commission to change physicians from Dr. Wilson to Dr. McCarthy; "he didn't know [he] had to." "No one ... contacted [appellee] in the last couple of years and asked [him] to pay anything over and above what was already paid in this case." His bills had either been paid by Medicare or Physician's Mutual. He *673 had received a letter from CMMS regarding the 2015 bills and was concerned that "at some point in the future, [he] could be contacted by Medicare with a request to reimburse it for payments made."
Travis Sharp, a "work comp examiner" for ArcBest, testified that he was not contacted by anyone with any medical provider-including Dr. McCarthy or St. Vincent Infirmary-requesting authorization for treatment in 2015. He agreed that a bill would not be sent to him until after treatment had been performed. He admitted that ArcBest has "a diary system" for purposes of reviewing a claimant's files and that he did not know the frequency with which a file was reviewed. Noting that another person was assigned to appellee's claim, whom he did not recall if she was "disengaged from the file at some point in time"[1] -which he stated "could be possible ... to happen on occasion"-he stated that he did not know the specific date on which appellee's claim was last reviewed before 2015. He did not know whether the file was reviewed in 2015 before appellee had his surgery.
Sharp went on to testify that appellee's file "could have been reviewed in preparation for this hearing" and that he "would have been the person conducting those reviews" and that he "would've reviewed [appellee's] file before March 2015" but he [could not] say when that review occurred without his notes." Said review would have included a determination of whether action needed to be taken. He "[doesn't] search out medical records" and "wasn't searching out medical records for [appellee] because [he] had no indication that he was treating." Having taken over the file in 2012, he did not know if, between 2004 and 2012, someone had contacted Dr. Wilson's office to determine whether additional medical records had been generated, but he "had no reason to believe" that someone had done so. He admitted that it was "a possibility that if [he] had contacted Dr. Wilson's office, [he] may have found out that, in fact, he was retiring and had had [sic] referred [appellee] to be seen by Dr. McCarthy." He further admitted that they "might have contacted Dr. McCarthy to find out whether or not she was treating" appellee if they had been informed that appellee's treatment was related to the workers' compensation claim. They have "a claim file that [appellee] signed" and they "used that authorization to obtain medical records."
The ALJ filed his opinion on April 16, 2018. Therein, he noted that "none of the medical records in either parties' exhibits contain the precise history of [appellee's] 2004 compensable injury." He made the following findings of fact and conclusions of law:
1. [Appellee] received a valid referral from Dr. John L. Wilson to Dr. Kathryn McCarthy.
2. The treatment received by [appellee] to date from Dr. Kathryn McCarthy, and other providers or entities associated with such treatment, was the result of a valid referral and was reasonably necessary in relation to [appellee's] compensable injury of June 28, 2004.
3. Rule 099.30 of the Arkansas Workers' Compensation Commission does not preclude [ABF's] responsibility for reasonably necessary medical care related to [appellee's] compensable injury of June 28, 2004.
4. The change of physician rules set forth in Ark. Code Ann. § 11-9-514 do not apply to this matter.
*674 5. To the extent that the Centers for Medicare & Medicaid Services may seek recovery or conditional payments in the future for reasonably necessary medical care related to [appellee's] compensable injury of June 28, 2004, [ABF] remains responsible for payment such subject to the fee schedule set forth in Rule 099.30 of the Arkansas Workers' Compensation Commission.
The ALJ stated that "[w]hile [he] did not regard [appellee's] testimony as uncontroverted, after observing his demeanor and the overall quality of his testimony, [he did] specifically find that [appellee] was a credible witness." The ALJ went on to state:
It is also noted that the submitted exhibits do not appear to contain an actual document that reflects a referral from Dr. Wilson to Dr. McCarthy. However, [appellee] has credibly testified that Dr. Wilson did, in fact, direct or refer him to Dr. McCarthy, and that he informed Dr. McCarthy's staff of his original history. Thereafter, Dr. McCarthy frequently copied Dr. Wilson on many of [appellee's] records that she prepared, which lends credence to [appellee's] testimony and understanding that he had been referred to her by Dr. Wilson. Based on these factors, I cannot conclude or find that [appellee] is accountable for the manner in which Dr. McCarthy's office thereafter pursued reimbursement or authorization. I do find, however, based on these same factors, that [appellee] received a valid referral from Dr. Wilson to Dr. McCarthy.
It is further noted that the record contains the front page of Commission Form AR-N, apparently signed by [appellee] on June 28, 2004, nearly 14 years prior to the hearing on this matter. The language preceding [appellee's] signature reflects, in pertinent part, that "My signature below also indicates that I have been provided with my rights regarding change-of-physician. (See additional information of back side of form)" (RX 3 at 1, emphasis added).
The "back side" of Form AR-N was not included in the record, and no testimony was elicited from [appellee] or Mr. Sharp to confirm whether the former had actually been provided with notice of his rights pertaining to a change of physician. As reflected above, [appellee] credibly testified that he was unaware of the need to request a change of physician. Consequently, absent proof that [appellee] was properly furnished with notice of the change of physician rules, or had any understanding of such, I find that the change of physician rules do not apply to this matter, pursuant to Ark. Code Ann. § 11-9-514(c)(2), and that nether Ark. Code Ann. §§ 11-9-514(b) or (c)(3) operate to preclude [ABF's] ongoing responsibility for reasonably necessary and related care.
Appellants appealed to the Commission.
In the Commission's September 5, 2018 opinion, it affirmed and adopted the ALJ's opinion. This timely appeal followed.
Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion.[2] In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion.[3] With regard to our standard of review, this court has stated:
*675 When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party.[4 ]
When reviewing the Commission's interpretation and application of its rules, we give the Commission's interpretation great weight; however, if an administrative agency's interpretation of its own rules is irreconcilably contrary to the plain meaning of the regulation itself, it may be rejected by the courts.[5] An administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong.[6]
The appellants' sole argument on appeal is that the commission erred in awarding appellee his expenses for medical treatment that was not authorized because the preauthorization requirement of Rule 30 is mandatory. The entirety of appellants' argument can be summarized as the plain meaning of "required[,]" as used in Rule 30, means that compliance with the rule is not discretionary and payment cannot be required when a claimant is not compliant.
Rule 099.30 (Rule 30) "[e]stablishes procedures for preauthorization of nonemergency hospitalizations, transfers between facilities, and outpatient services expected to exceed $ 1,000.00 in billed charges for a single date of service by a provider."[7] It goes on to state "[p]reauthorization is required for all nonemergency hospitalizations, transfers between facilities, and outpatient services expected to exceed $ 1,000.00 in billed charges for a single date of service by a provider."[8]
In Burlington Industries v. Pickett , our supreme court held that "there is nothing in Rule 30 which implies its requirements are discretionary."[9] Rule 30 contemplates carriers having medical bills submitted to them according to certain guidelines which would enable them to verify the merit and accuracy of claims.[10] The plain meaning of Rule 30 does not establish a duty on the part of a carrier to pay until claims meeting its requirements are properly submitted.[11]
*676 While noting that a different section is at issue in Burlington -section (I)(F)-our supreme court's broad language states that the entire rule, unless expressly stated otherwise, is mandatory. We have no ability to overturn Burlington ; therefore, preauthorization is yet another requirement placed on the claimant prior to imposition of a requirement to pay on the carrier.
Reversed.
Gladwin and Murphy, JJ., agree.

Sharp did not define what "disengaged" meant.

Stoker v. Thomas Randal Fowler, Inc. , 2017 Ark. App. 594, at 6, 533 S.W.3d 596, 600 (citing SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421 ).

Id.

Dick v. Conley Transp. , 2009 Ark. App. 789, at 4-5, 358 S.W.3d 904, 907 (citing Jones v. Wal-Mart Stores, Inc. , 100 Ark. App. 17, 262 S.W.3d 630 (2007) ).

Cyphers v. United Parcel Serv. , 68 Ark. App. 62, 68, 3 S.W.3d 698, 702 (1999) (citing Burlington Indus. v. Pickett , 336 Ark. 515, 988 S.W.2d 3 (1999) ).

Id. (citing Ark. Dep't Human Servs. v. Hillsboro Manor Nursing Home, Inc. , 304 Ark. 476, 803 S.W.2d 891 (1991) ).

099-00-001 Ark. Code R. 099.30(I)(A)(1)(s) (Weil 2010).

Id. 099.30(I)(S).

336 Ark. 515, 520, 988 S.W.2d 3, 6 (1999).

Id.

Id.