Cite as 2022 Ark. App. 322

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-21-543

| | |
|---|---|
| THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY<br><br>APPELLANT/CROSS-APPELLEE<br>V.<br><br>TARA ROWLAND<br><br>APPELLEE/CROSS-APPELLANT | Opinion Delivered September 14, 2022<br><br>APPEAL FROM THE WORKERS' COMPENSATION COMMISSION [NO. G406354]<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**BART F. VIRDEN, Judge**

The Evangelical Lutheran Good Samaritan Society (ELGSS) appeals the Arkansas Workers' Compensation Commission's (Commission's) decision that Tara Rowland's 2014 work-related compensable injury is causally linked to her tooth decay and that her subsequent need for dental implants is also related to the injury. On cross-appeal, Rowland argues that the Commission erred in finding that her May 24, 2019 surgery was not a medical emergency. We affirm on both direct appeal and cross-appeal.

I. *Relevant Factual History*

On April 14, 2014, Tara Rowland, who was employed in patient care by ELGSS, was struck on the right side of her face by a patient while at work. One of Rowland's teeth was chipped, and an MRI showed that Rowland suffered a bilateral disc displacement and that there was "bone to bone contact in right TMJ." ELGSS accepted the injury as compensable.

In April 2015, Dr. Kyle Wendfeldt and Dr. Scott Bolding recommended an initial surgery to stabilize the occlusion of her TMJ (temporomandibular joint), followed by orthodontic braces, and possibly orthognathic surgery after the braces were removed. Rowland underwent TMJ surgery and tooth repair, but the surgery did not stabilize the occlusion as hoped. After several attempts to stabilize the joint with splints, Dr. Kyle Wendfeldt and Dr. Bolding recommended going forward with braces and orthognathic surgery. ELGSS controverted the necessity of the braces and additional surgery, arguing that there was no causal connection between the compensable injury and the recommended treatment. In December 2016, the administrative law judge (ALJ) found the recommended treatment to be reasonably necessary in connection with Rowland's compensable injuries.[1] In 2017, Rowland began wearing braces; however, during the next two years, she developed dental caries, and in May 2019, her upper maxilla became infected. Due to the infection, Dr. Bolding determined that it was necessary to extract all of Rowland's upper teeth and on May 24 did so without seeking preauthorization for the procedure. In his June follow-up letter, Dr. Bolding recommended dental implants, an interim prosthesis while the implants were healing, and a final prosthesis after Rowland had healed. Dr. Bolding opined that Rowland's remaining lower teeth would also require extraction and dental implants, and he attributed her condition to the delays in treatment caused by ELGSS's controversion of her claim. ELGSS controverted the necessity

---

[1]ELGSS appealed this decision to the full Commission, and the decision was affirmed. The decision was not appealed to this court, and the Commission's decision became the law of the case.

2

of this treatment, arguing that there was no causal relationship between Rowland's 2014 injury and her dental caries and the subsequent extraction of her teeth and need for dental implants. ELGSS also contended that Rowland failed to obtain preauthorization for the May 24 surgery; thus, the procedure was not compensable. ELGSS argued that Rowland's dental caries were related to "dry mouth" caused by her use of opioids and other medications, kidney disease, and Sjögren's syndrome (a recently diagnosed autoimmune disorder.) Dr. Bolding testified by deposition that Rowland took opioids for the pain exacerbated by her delayed treatment and that he believed with a reasonable degree of medical certainty that the dental caries were related to her wearing braces for two years. The ALJ found that Rowland's dental caries were causally linked to her original injury, and the dental implants were reasonably necessary in connection with the compensable injury claim; however, the Commission found that Rowland was not entitled to the May 24 surgery and the costs related to that surgery because she failed to obtain preauthorization for the nonemergent procedure. ELGSS appealed the ALJ's decision, and the Commission affirmed. ELGSS timely filed their notice of appeal. Rowland timely filed her notice of cross-appeal.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have

3

reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock*, *supra.*

III. *Direct Appeal*

A. Whether the Commission Arbitrarily Ignored Medical Evidence that Rowland's Tooth Decay was Due to Noninjury-Related Reasons

ELGSS asserts that the Commission ignored evidence of Rowland's history of preinjury opioid use and continued opioid use, opioid withdrawal medication, kidney disease, and Sjögren's syndrome. We disagree.

Arkansas Code Annotated section 11-9-508(a) (Supp. 2021) requires an employer to provide medical services that are reasonably necessary in connection with the compensable injury. A claimant bears the burden of establishing by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury. *Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, at 3, 460 S.W.3d 814, 817. Though causation need not be proved by medical-opinion evidence, when a claimant relies on

4

medical opinion, that opinion must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16) (Repl. 2012). Medical opinions based on "could," "may," or "possibly" lack the definiteness required to prove compensability. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). Our law is clear that the Commission has the duty of weighing medical evidence, and if the evidence is conflicting, its resolution is a question of fact for the Commission. *Clairday v. The Lilly Co.*, 95 Ark. App. 94, 96, 234 S.W.3d 347, 349 (2006) The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, and this court is powerless to reverse the Commission's decision regarding which medical evidence that it chooses to accept when that evidence is conflicting. *Id.* However, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, at 9, 350 S.W.3d 421, 426.

The Commission specifically considered the evidence ELGSS asserts was arbitrarily ignored, finding that

> [t]hey have argued that the condition that necessitated Bolding's proposed treatment—Claimant's dental caries—are due to "non-work-related conditions and medications" and thus are not their responsibility. They have identified her as having such unrelated conditions as opioid use, Sjogren's Syndrome, and kidney disease.

> To the extent that any of the above conditions had any role in the deterioration of Claimant's dental situation, they would not foreclose the responsibility of Respondents No. 1 for her treatment. The Commission credited Dr. Bolding's explanation that the breakdown of Rowland's teeth was caused by the deterioration of her TMJ, which had shifted to the left from being struck on the right side of her face. The Commission found credible Dr. Bolding's testimony that the braces necessary to correct the position of Rowland's teeth and jaw had caused her dental caries. The Commission also credited Dr. Bolding's testimony that the delay in her

5

treatment exacerbated and worsened Rowland's condition, explaining that "[t]he evidence bears out that there was an extensive delay in the initiation of some of Claimant's dental treatment as a result of the controversion by Respondents No. 1." The delay in treatment caused Rowland's chronic pain necessitating her opioid use, which in turn caused Rowland to have the dry mouth condition that contributed to her dental caries. The Commission did not arbitrarily ignore the evidence but simply weighed it differently than ELGSS wanted. We do not reweigh evidence. *See Hines v. Central Ark. Transit Authority*, 2019 Ark. App. 553, 590 S.W.3d 750.

B. The Factual Basis for Dr. Bolding's "Post-Operative Theories about Causation"

With the above discussion in mind, we turn to ELGSS's closely related second point on appeal. ELGSS argues that the Commission arbitrarily disregarded that, prior to Rowland's May 24, 2019 surgery, Dr. Bolding identified only "degenerative issues" and stated that "the only injury to Appellee's teeth attributed to the incident was a single chipped molar[.]" ELGSS argues that Dr. Bolding "is bound by his own documentation and reports," which do not show any causal relationship between Rowland's tooth decay and the 2014 injury. ELGSS's argument is not well taken.

Dr. Bolding's presurgical medical notes support his opinion that beginning in 2014 Rowland's dental and jaw problems, which eventually included dental caries, were the direct result of her work-related injury and the subsequent delays in treatment and the braces necessary to address her injury. In December 2014, Rowland reported to Dr. Bolding that in April 2014, her tooth was chipped when she was hit on the right side of her face, and she began having jaw pain that she had never had before the injury. At that time, Dr. Bolding observed that she had degeneration of the anterior pole condyle on the right with a possible subcondylar fracture in the past. An MRI was ordered to assess the extent of her joint

6

damage, and she was found to have bilateral disc displacement and bone-to-bone contact on the right TMJ. In his report, Dr. Bolding stated that he "highly suspected that the injury has caused her disk displacement." Dr. Bolding recommended a splint for six to eight weeks. In late March, Dr. Bolding noted that Rowland was still experiencing TMJ pain, and after several splint adjustments, he recommended surgery. Rowland had the oral surgery, and at her postsurgical follow up a week later, she complained of pain and headaches. Rowland was prescribed opioid medication for the pain. On August 27, 2015, she still reported some pain, and Dr. Bolding noted that she needed braces and that her workers'-compensation adjuster would be contacted for authorization of the orthodontic treatment. On June 26, 2017, Dr. Bolding stated in his report that

> Patient had bilateral TMJ arthroplasties on 6-9-15 as a result of trauma sustained in April 2014. Patient has needed orthognathic surgery and orthodontics for close to 2 years to stabilize her occlusion and protect her TMJ and was not able to receive approval in a timely manner from Workers' Comp for subsequent surgeries which in turn delayed her progress.

> Again, on June 25, 2018, Dr. Bolding stated in his report that Rowland

> had bilateral TMJ arthroplasties on 6/9/15 as a result of trauma sustained in April 2014. Patient has needed orthognathic surgery since her joints were repaired in order to stabilize her occlusion and protect her joints. She did not receive approval from [workers' compensation] in a timely manner and now her joints have deteriorated.

On January 9, 2019, five months before the surgery, Dr. Rowland noted the degeneration of Rowland's TMJ due to an injury at work and stated in his report that Rowland would need to have dental restoration done before the reconstruction could begin. Dr. Bolding reported that

Dr. Brad Coleman states that these teeth [ 2, 6, and 7) are grossly carious and would require significant caries excavation, root canal therapy, and crowns in order to salvage these teeth. Patient is considering extracting the teeth if necessary. She is not having pain with her teeth but has severe jaw pain while waiting for her total joint reconstruction surgery. She has had braces for several years while waiting for her insurance to approve the surgery, therefore she has developed significant dental caries in some of her teeth.

The record shows that the Dr. Bolding's medical opinion that that the tooth decay and the cascade of dental problems that accompanied the dental caries were well documented before his June 2019 letter. We hold that reasonable minds could accept the evidence considered by the Commission as adequate to support the Commission's conclusion.

C. The Causal Link Between Rowland's Injury and Need for Dental Implants

As we held above, ELGSS's arguments that there is no causal connection between the 2014 injury and Rowland's dental caries are not meritorious; therefore, the contention that Rowland's need for dental implants is not causally related to the 2014 injury similarly carries no merit.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." A claimant who has sustained a compensable injury is not required to offer objective medical evidence to prove entitlement to additional benefits; however, a claimant bears the burden of proving entitlement to additional medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, at 9, 558 S.W.3d 408, 414. What constitutes reasonably necessary treatment is a question of fact for

the Commission. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Cent. Moloney, Inc. v. Holmes*, 2020 Ark. App. 359, 605 S.W.3d 266. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id.*

Dr. Bolding described dental and jaw problems, including dental caries, that were, in his medical opinion, the direct result of delays in treatment for Rowland's 2014 injury due to ELGSS's controversion of her claim. We affirm the Commission's decision that the dental caries were causally connected to the 2014 injury; likewise, we hold there is substantial evidence supporting the Commission's decision that Rowland is entitled to Dr. Bolding's recommended additional medical treatment related to the dental caries.

## IV. *Cross-Appeal*

Rowland did not seek preauthorization for her May 24, 2019 surgery, and on cross-appeal she asserts that the extraction of her upper teeth was a medical emergency due to the risk of infection and complications from infection.

Arkansas Administrative Rule 099.30 (Rule 30) "[e]stablishes procedures or preauthorization of nonemergency hospitalizations, transfers between facilities, and outpatient services expected to exceed $ 1,000.00 in billed charges for a single date of service by a provider." 099.00.001-099.30 Ark. Admin. Code § (I)(A)(1)(s) (WL current through Apr. 15, 2022). Rule 30 further provides that "[p]reauthorization is required for all

9

nonemergency hospitalizations, transfers between facilities, and outpatient services expected to exceed $ 1,000.00 in billed charges for a single date of service by a provider." *Id.* § (I)(S); *see ABF Freight Sys., Inc. v. Dugger*, 2019 Ark. App. 176, at 9, 574 S.W.3d 670, 675.

The Commission denied Rowland's claim of exemption from preauthorization, finding that

> [i]n reading Rule 30(I)(S), it becomes readily apparent why only "nonemergency" treatment has to be pre-authorized: a true emergency, i.e., a health crisis that arises suddenly and necessitates immediate treatment, would not provide sufficient advance warning that would enable the preauthorization process to take place. Here, the record does not reflect that Claimant's dental condition was sudden in origin. To the contrary, she had begun seeing him long before the date of the surgery. In January 2019, and as recently as April 10 and May 20 of 2019, Claimant went to Bolding in regard to undergoing extractions of some of her teeth. These reports disclose that the serious nature of her dental condition—including some teeth which were described as "grossly carious"—was already known days in advance of the surgery. Claimant has attempted to argue otherwise, pointing out that her surgery was more extreme than envisioned because she expected only two to four teeth to be extracted when all of her upper teeth ended up getting removed during the visit. But Dr. Bolding was adamant in his testimony that this was not the case, explaining that when she returned on May 18, 2019, after reporting that she thought she had broken her jaw, "she had infection throughout her entire arch." Bolding stated that he consulted with Drs. Coleman and Wendfeldt and the determination was made that the upper teeth could not be saved. The following exchange took place:

> > Q. Did Miss Rowland know you were extracting the 15 teeth before they came out?

> > A. Yes.

The Commission relied on Dr. Bolding's testimony that Rowland's condition "was not a life–life or death threatening that she needed to go in the hospital immediately. . . . Tara was in an urgent situation that needed care relatively soon." The Commission determined that Rowland's condition and treatment were nonemergent and that Rowland

did not prove by a preponderance of the evidence that she was entitled to the May 24 surgery or that ELGSS is responsible for the costs and mileage associated with it. The Commission's decision is supported by substantial evidence, and we affirm.

Affirmed on direct appeal; affirmed on cross-appeal.

GRUBER and BROWN, JJ., agree.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellant/cross-appellee.

*Frederick S. "Rick" Spencer*, for appellee/cross-appellant.