Wilma J. CASTLEBERRY *v.* ELITE LAMP COMPANY

CA 99-1028                                          13 S.W.3d 211

Court of Appeals of Arkansas
Division II
Opinion delivered March 22, 2000
[Petition for rehearing denied April 26, 2000.]

*Hale, Fogleman & Rogers*, by: *Joe M. Rogers*, for appellant.

*Rieves & Mayton,* by: *David S. Wilson, III,* for appellee.

JUDITH ROGERS, Judge. This is an appeal and cross-appeal from the Arkansas Workers' Compensation Commission. We reverse and remand on direct appeal. We affirm on cross-appeal.

Wilma Castleberry has been a factory worker most of her life. She has a ninth-grade education. In the 1980s, Castleberry suffered from carpal tunnel syndrome for which she underwent surgery. She began working for Elite in January 1994 and was working there on February 9, 1995, when she was injured. Her duties involved making 300 to 500 lampshades every day. On February 9, while turning a lampshade, Castleberry felt a sharp pain in her wrist. She returned to work the following day, but because of the pain in her wrists was unable to continue and has not worked since. She testified that she experiences numbness in both hands, swelling, aching, and an inability to move her thumbs or twist her wrists. Castleberry's injury was accepted as compensable initially, and Elite paid medical benefits and temporary total disability (TTD) benefits. They unilaterally discontinued the TTD payments on April 6, 1995.

Castleberry initially sought treatment with Dr. Bibb who recommended she see Dr. Howser, a neurosurgeon in Memphis. On April 26, 1995, Dr. Howser noted that an EMG revealed Castleberry to be suffering from carpal tunnel syndrome (CTS) and recommended surgery. Castleberry moved to Michigan to live with her family because she was unable to support herself without disability payments. Dr. Howser agreed to send her records to Michigan so that she could receive treatment. On November 21, 1995, Castleberry was evaluated by Dr. Leslie Wong. Although Castleberry had only requested a change of physician, Elite's compensation carrier scheduled an Independent Medical Examination (IME) with Dr. Wong. At the November 21, 1995, examination, Dr. Wong found some subjective evidence of CTS and ordered an EMG for clarification. He reported these findings to the insurance company's claims manager in charge of Castleberry's file by letter that same day. The EMG was performed by Dr. Kreitsch on November 29, 1995, and reportedly ruled out CTS. Dr. Kreitsch noted, however, that the evidence of CTS may have been stronger when the EMG was done by Dr. Howser closer to the date of the injury. These results were forwarded to Dr. Wong that same day.

On December 5, 1995, a hearing was conducted before Judge Harrison. Elite did not enter the report of Dr. Wong or the results of the EMG into evidence. In an opinion which was not issued until April 24, 1996, Judge Harrison held that Castleberry had sustained her burden of proof. The opinion stated that Castleberry was entitled to "ongoing medical care under the direction of Dr. Wong," and TTD "until she has obtained appropriate medical care and is released to return to work." Neither party appealed.

On December 12, 1995, Castleberry returned to Dr. Wong and was diagnosed with de Quervain's syndrome. Castleberry continued to seek treatment for her compensable injury. She first attempted to return to Dr. Wong for treatment as specifically allowed by the order of April 24, 1996. Dr. Wong refused to treat her because he had only been authorized initially to conduct an IME, and it is his practice not to continue treatment of patients on whom he conducts an IME. By letter dated August 1, 1996, Dr. Wong informed Elite that Castleberry was only partially disabled, not totally, when he examined her in November and December. As a result of this letter, Elite unilaterally decided that Castleberry was only entitled to TTD benefits through November 21, 1995, a date preceding the hearing and order awarding benefits. In August 1996, Elite paid TTD benefits in the amount of $4,492.85 to cover the period of April 7, 1995, until November 21, 1995.

Next Castleberry sought treatment from Dr. Sebright, but testimony reveals that Elite's compensation carrier failed to set up the appointment. Castleberry then went to Dr. Hollenbech. Elite informed her by letter March 20, 1997, that they were "not willing to authorize the examination with Dr. Hollenbech." Although they asserted that they were "not denying medical treatment," Castleberry was never treated by Dr. Hollenbech. Elite did inform Castleberry that they would allow her to seek treatment with a new physician and requested a list of physicians from whom to choose. She never provided this list. She did attempt to obtain treatment from Dr. Conduit, but that treatment was refused by Elite's insurance carrier as well.

Finally, on May 6, 1997, Castleberry returned to Memphis in her search for treatment and was examined again by Dr. Howser. He recommended another EMG and a consultation with Dr. Knight, an orthopedic surgeon. Elite again denied treatment. As of

July 1997, Dr. Howser's opinion was that Castleberry suffered from both carpal tunnel syndrome and de Quervain's syndrome. He stated that Castleberry had not yet reached maximum medical improvement.

Following the denial of the treatment recommended by Dr. Howser in 1997, Castleberry again filed a claim in the Workers' Compensation Commission. She sought benefits from November 21, 1995, until such time as she has received appropriate treatment and been released to return to work, as Judge Harrison's opinion had granted her. She also sought medical benefits for treatment of her compensable injury, as had previously been granted by Judge Harrison. A hearing was held May 7, 1998, which was not held before Judge Harrison, but before Judge Elizabeth Hogan. In an order filed July 24, 1998, Judge Hogan granted Castleberry additional TTD benefits from November 21, 1995, until December 12, 1995. She ordered Elite to pay a twenty percent penalty for the benefits not paid within forty-five days of Judge Harrison's order. She also granted additional medical benefits for treatment of Castleberry's de Quervain's syndrome "based on objective medical findings. If there are no objective signs of de Quervain's syndrome on the left, or if the bilateral symptoms have abated with inactivity, then respondents are not liable for further medical treatment." The full Commission affirmed and adopted the opinion of Judge Hogan.

Castleberry appeals from the award of benefits from November 21 until December 12, 1995, claiming error under the theory of *res judicata* because the original order specified that the benefits should be ongoing until she receives treatment and is released to return to work. She also appeals the limitation of her medical treatment to the de Quervain's syndrome as supported by objective findings. Elite cross-appeals the award of benefits beyond November 21, 1995, and the imposition of the twenty-percent (20%) penalty for late payment of benefits. We find that the Commission improperly disregarded the April 24, 1996, opinion by Judge Harrison that was never appealed. That decision is *res judicata*. Accordingly, we reverse and remand on direct appeal and affirm on cross-appeal.

■ On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Morelock v.*

*Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998); *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Jeter, supra; Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). We first address the issue of *res judicata*.

### Res Judicata

Castleberry argues that the Commission erred by not follow-ing the law of the case. She asserts that in 1996 Judge Harrison awarded her temporary total disability "until she has obtained appropriate medical care and is released to return to work." That order was not appealed. In the opinion adopted by the full Com-mission, Judge Hogan awarded additional benefits, but only until December 12, 1995. Castleberry argues that this is contrary to the order of Judge Harrison because she has neither obtained appropri-ate medical care nor been released to return to work. Therefore, she argues, *res judicata* prevents the discontinuance of benefits on December 12, 1995. We agree.

*Res judicata* applies where there has been a final adjudica-tion on the merits of the issue by a court of competent jurisdiction on all matters litigated and those matters necessarily within the issue which might have been litigated. *Beliew v. Stuttgart Rice Mill*, 64 Ark. App. 334 (1998); *Perry v. Leisure Lodge*, 19 Ark. App. 143, 718 S.W.2d 114 (1986). The doctrine of *res judicata* is applicable to decisions of the Commission. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996); *Tuberville v. International Paper Co.*, 18 Ark. App. 210, 711 S.W.2d 840 (1986). The key question regarding the application of *res judicata* is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Cater v. Cater*, 311 Ark. 627, 846 S.W.2d 173 (1993); *Pine Bluff Warehouse v. Berry*, 51 Ark. App. 139, 912 S.W.2d 11 (1995).

■ In the case at hand, the award of temporary total disability benefits was an issue decided in the 1996 opinion from which no appeal was taken. That decision granted benefits to Castleberry until such time as "she has obtained appropriate medical care and is released to return to work." *Res judicata* bars relitigation of that determination unless there is evidence of change following the previous order. *See Cariker v. Ozark Opportunities*, 65 Ark. App. 60, 987 S.W.2d 736 (1999); *Tuberville, supra.* Following Judge Harrison's order of April 24, 1996, Elite paid benefits only through November 21, 1995. Castleberry petitioned the Commission for further payment of benefits in compliance with Judge Harrison's order. The Commission only awarded her benefits until December 12, 1995. In arriving at this date for the termination of disability benefits, the Commission relied upon the opinion of Dr. Wong that Castleberry was only partially disabled when he saw her, and that her carpal tunnel syndrome appeared to have improved with rest. The Commission noted the lack of medical treatment provided to Castleberry.

■ The Commission erred by terminating Castleberry's TTD benefits as of December 12, 1995, because, unless there was evidence of change in her condition, the Commission was bound by *res judicata* to follow the decision of Judge Harrison that Castleberry was temporarily and totally disabled until such time as she received appropriate medical care and was released to return to work. The evidence upon which the Commission relied was available to Elite at the time of the hearing before Judge Harrison. Although Elite argues that the reports of Dr. Wong were not taken into account by Judge Harrison in her order granting benefits, the failure of Elite to introduce the medical evidence was its own decision. Elite had a full and fair opportunity to litigate the issue and could have introduced the results of the EMG at the hearing as well as Dr. Wong's report that the only evidence of CTS on November 21, 1995, was subjective in nature. *See Berry, supra.*

■ Nor does the new evidence presented to the Commission support a finding of changed circumstances. The only new evidence following the order of Judge Harrison was the opinion of Dr. Howser that Castleberry had not yet reached maximum medical improvement and that she needed additional treatment for her CTS and de Quervain's syndrome. Dr. Howser was the only physician to examine Castleberry after the award of benefits. Because there is

insufficient evidence to support a finding of changed circumstances, the Commission should have limited its findings to whether the conditions established by Judge Harrison's April 24, 1996, order had been met.

■ The conditions specified by Judge Harrison had not been met. In fact, the Commission found that Castleberry had not received appropriate medical care as had been ordered by Judge Harrison. Following the April 24, 1996, order, Castleberry sought treatment from six separate physicians, yet Elite refused to authorize any. Elite's actions have resulted in the denial of all medical treatment for a condition which was held to be compensable by the Workers' Compensation Commission four years ago. The Commission also noted that Dr. Wong's letter was silent as to issues of employment capability. The evidence shows that Dr. Howser likewise never released her to return to work. He only noted in his 1997 report that Castleberry had not yet reached maximum medical improvement. Because the conditions of Judge Harrison's order have not been met, Castleberry is entitled to ongoing disability benefits until such a time as she has received appropriate medical treatment and is released by her doctor to return to work as Judge Harrison ordered on April 24, 1996. *See Harvest Foods, supra.* We therefore reverse and remand this matter to the Commission for the award of benefits consistent with this opinion.

■ On cross-appeal, Elite argues that the Commission erred by extending the temporary total disability payments until December 12, 1995. Elite argues that it was only liable for benefits until November 21, 1995, the point at which it unilaterally terminated benefits despite Judge Harrison's order to the contrary. As has been discussed at length above, Castleberry's entitlement to benefits is ongoing as a result of Elite's failure to provide the medical care awarded in 1996. Consequently, Elite's challenge to the award of benefits from November 21 until December 12, 1995, is moot.

*Additional Medical Benefits*

■ Castleberry next argues that the Commission erred by limiting her treatment to only the de Quervain's syndrome as evidenced by objective findings. Again, Castleberry was awarded benefits for the treatment of her carpal tunnel syndrome in 1996. The

only new medical evidence available to the Commission is the opinion of Dr. Howser from 1997 that appellant is still suffering from carpal tunnel syndrome along with de Quervain's syndrome and is in need of treatment. The doctrine of *res judicata* bars the Commission from now denying Castleberry the treatment which she has previously been awarded. *See Harvest Foods, supra.*

█ █ Likewise, the Commission erred in requiring Castleberry to provide objective evidence of her continued need for treatment. Appellant is entitled to continued medical treatment until the end of her healing period. *See Chamber Door Indus., Inc. v. Graham,* 59 Ark. App. 224, 956 S.W.2d 196 (1997). The healing period is that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. *Nix v. Wilson World Hotel,* 46 Ark. App. 303, 879 S.W.2d 457 (1994). If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Id.* Whether an employee's healing period has ended is a factual determination to be made by the Commission. *Ketcher Roofing Co. v. Johnson,* 50 Ark. App. 63, 901 S.W.2d 25 (1995). However, we do not require objective evidence that the healing period continues. *Graham, supra.* Again, the only evidence before the Commission was Dr. Howser's report that Castleberry had not reached maximum medical improvement. Castleberry is thus entitled to additional medical treatment for her compensable carpal tunnel syndrome and de Quervain's syndrome.

### Twenty Percent Penalty

On cross-appeal, Elite contests the award of a twenty-percent penalty arguing that it was not supported by substantial evidence. Arkansas Code Annotated section 11-9-802(c) provides:

> If any installment, payable under the terms of an award, is not paid within fifteen (15) days after it becomes due, there shall be added to such unpaid installment an amount equal to twenty percent (20%) thereof . . . .

█ The judgment awarding Castleberry benefits was entered April 24, 1996. Elite paid benefits on August 8, 1996, far beyond the fifteen days provided by statute. Substantial evidence supports

the imposition of the penalty. Elite now argues that because the award of benefits was to a date uncertain, they should not be held responsible for their failure to promptly pay because they were unsure of their obligations under the order. This same argument failed in *Harvest Foods*, *supra*, where benefits were awarded to a date uncertain in an order which was not appealed. As in *Harvest Foods*, there is no evidence of proof of payment until several months after it became due. Therefore, the Commission did not err in imposing the penalty.

Reversed and remanded on appeal; affirmed on cross-appeal.

MEADS and ROAF, JJ., agree.