Cite as 2025 Ark. App. 546

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-25-61

| | |
|---|---|
| MHM SUPPORT SERVICES AND SISTER OF MERCY HEALTH SYSTEMS<br>APPELLANTS | Opinion Delivered November 12, 2025<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. G600552] |
| TAMMY MILLER<br>APPELLEE | AFFIRMED |

## CASEY R. TUCKER, Judge

This appeal follows the October 16, 2024 decision of the Arkansas Worker's Compensation Commission (the Commission) affirming and adopting the May 29, 2024 opinion of the administrative law judge (ALJ) that, as a result of a compensable injury that occurred on January 22, 2016, appellee Tammy Miller (1) suffered a permanent physical impairment in an amount equal to 30 percent to the body as a whole to her left hip and 5 percent to the body as a whole for her pelvic floor dysfunction; and (2) that she is permanently and totally disabled.

On appeal, appellants, MHM Support Services and Sisters of Mercy Health Systems, argue that (1) under the doctrine of res judicata, the Commission erred in awarding permanent total disability to Miller because this issue was adjudicated by the Commission before May 29, 2024; (2) there was not substantial evidence to support the award of

permanent total disability because Miller's physical condition had not changed; and (3) there was not substantial evidence to support the award of permanent impairment in the amount of 5 percent to the body as a whole due to a compensable pelvic floor dysfunction and in the amount of 30 percent to the body as a whole due to a compensable left hip injury. We affirm.

I. *History*

Before the present appeal, the injuries Miller suffered on January 22, 2016, led to three hearings before an ALJ and two appeals to the Commission. Miller, a registered nurse for Mercy Hospital, was running down a hallway when a pair of scissors fell out of her scrubs pocket. She turned to see what had fallen, and when she did, she fell to the floor. Her initial complaints of pain were in her knee, hip, and left buttock.

From January 22, 2016, until December 21, 2018, Miller received treatment for her knee, hip, and left buttock, including a lumbar fusion of her L4-5 and L5-S1, a revision with decompression and posterior lateral fusion, a left SI joint fusion, a right SI joint fusion, an IT band release, a piriformis release of her left hip, greater trochanteric bursectomy of her left hip and debridement of the gluteus medius tendon with repair of her left hip, a piriformis resection, and psoas resection.

A. First Controverted Claim

Appellants initially provided some benefits to Miller but later controverted her claim in its entirety. Because of the controversion, Miller filed a claim with the Commission, and a hearing was held before an ALJ on June 12, 2019. On August 5, 2019, the ALJ issued a

2

decision finding that Miller's January 22, 2016 fall resulted in a compensable injury to her left hip, left knee, and low back but not to her SI joints. In an opinion dated June 4, 2020, the Commission affirmed and adopted the ALJ's opinion awarding Miller medical and temporary total-disability (TTD) benefits beginning January 23, 2016, continuing until a date to be determined for the injuries to her left hip, left knee, and low back but reversed on the issue that Miller had not sustained a compensable injury to her SI joints, finding she was entitled to benefits.

## B. Second Controverted Claim

The case came before the ALJ a second time when Miller filed a claim for permanent total-disability (PTD) benefits in excess of the 14 percent permanent impairment rating[1] due to her reaching maximum medical improvement on June 30, 2019. She contended she was permanently and totally disabled as a result of the compensable injury. After a hearing, the ALJ issued an opinion on February 25, 2021, finding that Miller failed to prove she was permanently and totally disabled as a result of the 2016 incident but found that Miller suffered a significant loss in wage earning capacity in an amount equal to 60 percent to the body as a whole. The ALJ's opinion was affirmed and adopted by the Commission on August 26, 2021.

## C. Third Controverted Claim

[1]The parties had stipulated to Miller's impairment rating at a prehearing conference.

On November 3, 2021, Miller saw Dr. Dougherty for additional treatment of her left hip. Dr. Dougherty ordered a CT myelogram of her lumbar spine and an MRI of her pelvis. The MRI dated December 6, 2021, listed the following under "Impression":

1. Mild tendinosis of the distal left gluteus medius and gluteus minimus tendons. Low-grade partial tear distal left gluteus medius tendon. Mild fluid adjacent to this tear is improved when compared to prior MRI 7/30/2018. Additionally, no significant bursitis identified today, improved from prior.

2. Moderate tendinosis of the distal right gluteus minimus and gluteus medius tendons.

3. Mild tendinosis proximal right hamstring tendons.

Dr. Dougherty also diagnosed Miller with pelvic floor dysfunction, which he related directly to her compensable injury. He recommended physical therapy for her pelvic floor dysfunction and surgery on her left hip. He recommended she remain off work indefinitely beginning on November 3, 2021. Miller filed a claim stating that she entered a second healing period and therefore was entitled to additional TTD benefits. Appellants disputed Miller was entitled to additional TTD benefits during this time period. The ALJ issued an opinion on June 29, 2022, finding that Miller was entitled to additional TTD benefits beginning on November 3, 2021, through a date to be determined. That decision by the ALJ was not appealed and became final.

### D. Fourth Claim

Miller continued to treat with Dr. Dougherty. While she did not undergo the recommended surgery on her left hip, Dr. Dougherty ordered a bone scan of her hip, and

4

the findings were "unremarkable." Miller was diagnosed with complex regional pain syndrome of the left lower limb and osteoarthritis of the left hip with left hip pain. Miller's last visit with Dr. Dougherty occurred on July 12, 2023, and she was assessed as having reached maximum medical improvement, received lifting and ambulation restrictions, and was assigned an impairment rating equal to 30 percent to the body as a whole for her hip.

Miller filed for PTD benefits based on her change in physical condition since the August 26, 2021 hearing. A hearing before the ALJ was held on May 8, 2024. Miller testified on her behalf and presented Dr. Dougherty's testimony via deposition.

Miller testified extensively about her work history. As Miller explained, before her employment with MHM, her work history included jobs that involved significant lifting, prolonged standing, or extensive driving. According to Miller's testimony, the chronic pain conditions in her back and hip prevent her from doing that type of employment:

| [MILLER'S ATTORNEY]: | So let's talk about your current physical condition. What kinds of problems are you having as a result of your January 2016 injury as far as your physical condition or physical capability is concerned? |
|---|---|
| MILLER: | I still have burning pain on the top of my left thigh. I have got a lot of pain in my left hip. Groin pain. I have got some pelvic pain. My lower back hurts. I have got pain in my right buttock that is a burning nerve pain that will sometimes travel down to my left -- I'm sorry, my right foot. And I have got difficulty with controlling my bladder. |

5

According to Miller, she is not currently able to perform any of her former jobs. Dr. Dougherty, in his deposition, was specifically asked about the condition causing Miller's ongoing hip problems. In response he stated:

DR. DOUGHERTY: She has what's called Greater Trochanteric Pain Syndrome.

[MHM'S ATTORNEY]: Okay. Tell me what that is.

DR. DOUGHERTY: It's just chronic pain about the hip. It's not trochanteric bursitis as an isolated entity. So when you tear tendons, when you sew them back down, they can develop what's called neovascularization, which can cause continued pain when there's an increased substance P, which is associated with pain that comes from the repair site.

And so when you see that, when you've got a patient that's persistently painful, there's not much you can do for that. You can try PRP (platelet-rich plasma). I told her we could try putting another patch on there to see if we can get the healing process to stimulate and maybe go away, but there's no guarantee with anything. That's why I told her I –

. . . .

[MHM'S ATTORNEY]: Okay. And what is the actual cause of the chronic pain? Is it from this surgical site or –

DR. DOUGHERTY: Most typically from the surgical site, yeah. That's what I was talking about, the neovascularization on the tendon.

[MHM'S ATTORNEY]: And explain to us in layman's term what that means.

6

DR. DOUGHERTY: So with tendon inflammation, you sew the tendon back down and it starts healing, you get inflammation. With the inflammation comes increased blood, so little vessels go into the area. The blood vessels growing into the tendon can cause the pain.

Dr. Dougherty further explained that he diagnosed Miller's tendon inflammation through objective tests and imaging studies. Miller's continued troubles with her hip resulted in her entitlement to a permanent impairment rating under the *AMA Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*AMA Guides*"). Dr. Dougherty assessed her hip with a functional rating of ten and under the *AMA Guides*, this translates to a 30 percent disability of the hip, taking into account the limitations, range of motion, and ability to ambulate (including durational ability). Accordingly, Dr. Dougherty opined that Miller would not be able to return to regular gainful employment as a nurse.

With respect to Miller's pelvic floor dysfunction, the following colloquy took place:

[MILLER'S ATTORNEY]: So tell us about the pelvic floor dysfunction. How does it affect you?

MILLER: I have got some bowel dysfunction with that and I am having problems with bladder leakage and making it to the bathroom on time if I feel like I have to urinate.

[MILLER'S ATTORNEY]: Does your level of pain have any affect on how often those things occur?

MILLER: Yes. The more flared up my hip is with pain, the more of a harder time that I have controlling my bladder and with bowel dysfunction.

. . . .

7

| [MILLER'S ATTORNEY]: | And why do you wake up in such a short period of time? |
|---|---|
| MILLER: | It is either from the pain that I wake up from or I feel like I have to use the restroom. And I think I am a little paranoid with waking up and having to use the restroom because I am afraid I am going to wet the bed. There have been times when I woke up and I felt like I had to urinate and I didn't. And then when I woke up later and I felt like I needed to go pee, then when I stood up, I peed on the floor. |

Dr. Dougherty explained:

So any time you have an injury about the hip, the muscles that connect to the hip are actually very close to the pelvic floor. What we know through research and published studies is, if you have hip pain, you can develop pelvic floor dysfunction. So what that means is problems with urination, bladder retention, posture, simple things like that. And so any time that we do hip scopes now, we start, we have started recommending people do pelvic floor exercises.

As described by Dr. Dougherty, Miller has chronic pelvic floor dysfunction causing her difficulty with alternating between sitting and being able to stand for prolonged periods of time—all caused by the weakness in her hip joint and the associated pain. He testified it is a permanent, disabling condition, and she had reached maximum medical improvement. However, he testified he did not know how to assign a permanent impairment rating for the pelvic floor dysfunction using the *AMA Guides*.

At the conclusion of the hearing, Miller requested that the court use its authority to determine a permanent impairment rating for her pelvic floor dysfunction and to accept Dr. Dougherty's impairment rating of 30 percent to the body as a whole for her left hip injury.

The ALJ determined Miller had met her burden of establishing that she is now permanently and totally disabled. The ALJ assessed her pelvic floor impairment rating as 5 percent to the body as a whole, adopted Dr. Dougherty's 30 percent impairment rating to the body as a whole with respect to the left hip, and awarded Miller PTD benefits. On appeal and by opinion dated October 16, 2024, the Commission affirmed and adopted the ALJ's decision. From that decision, appellants filed the present appeal.

## II. *Analysis*

On review of the decision from the Commission, our court is "limited to the single issue of whether there is substantial evidence in the record to support the Commission's findings of fact." *Dena Constr. Co. v. Herndon*, 264 Ark. 791, 795, 575 S.W.2d 155, 158 (1970). The substantial-evidence standard asks "whether reasonable minds could reach the result found by the Commission." *Willis v. Great Dane Trailers*, 2014 Ark. App. 547, at 2, 444 S.W.3d 423, 425. In appeals involving claims for workers' compensation, this court reviews the evidence in a light most favorable to the Commission's decision and will affirm if supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, at 12, 431 S.W.3d 858, 867. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion by the Commission. *Id.* We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id.*

### A. Res Judicata

Appellants argue that under the doctrine of res judicata, the Commission erred in awarding permanent total disability to Miller because this issue was adjudicated by the Commission before May 29, 2024. In the opinion dated August 26, 2021, the Commission denied Miller PTD benefits after reaching maximum medical improvement on June 30, 2019. Appellants argue that Miller failed to establish she suffered a change in condition sufficient to justify a second adjudication for PTD benefits, urging this court to find it is barred by res judicata. We disagree.

Res judicata bars relitigation of a determination unless there is a change following the previous order. *Castleberry v. Elite Lamp Co.*, 69 Ark. App. 359, 366, 13 S.W.3d 211, 215–16 (2000). In *Cariker v. Ozark Opportunities*, 65 Ark. App. 60, 63, 987 S.W.2d 736, 738 (1999), this court held that res judicata does not "bar a determination that a subsequent period of complications may entitle a claimant to additional benefits so long as the subsequent period of complication is distinguishable from those that existed at the time the issue was litigated."

The issue before us is whether there was substantial evidence that there had been a change in Miller's physical condition since the denial of PTD benefits in the Commission's opinion adopted on August 26, 2021. In the ALJ opinion dated June 29, 2022, which was not appealed, the ALJ found that Miller had entered a new "healing period" for additional left hip pain and pelvic floor dysfunction as of November 3, 2021, which was the date that she first saw Dr. Dougherty after being denied permanent and total disability on August 26, 2021. The parties stipulated that Miller has a 14 percent impairment rating to her back and SI joint. The ALJ awarded TTD benefits beginning on November 3, 2021, and continuing

10

to a date to be determined. TTD is defined as that period within the healing period in which the employee suffers a total incapacity to earn wages. *J.A. Riggs Tractor Co. v. Eckhart*, 30 Ark. App. 200, 785 S.W.3d 51 (1990). The healing period is defined as "that period for healing of an injury resulting from an accident." Ark. Code Ann. § 11-9-102(12) (Supp. 2021). The June 29, 2022 ruling was not appealed. This ALJ opinion is clearly evidence of a change in physical condition.

The June 29, 2022 ALJ opinion finding that Miller had entered a new healing period is substantiated by Dr. Dougherty's medical opinion based on objective testing and imaging studies that Miller had a left gluteus medius tendon tear that resulted in neovascularization causing her significant pain. Dr. Dougherty associated the weakness in her hip joint as the cause of her pelvic floor dysfunction and diagnosed her with complex regional pain syndrome—none of which existed on August 26, 2021, when she was denied PTD benefits. We affirm the Commission's finding that a change in Miller's physical condition occurred after the August 26, 2021 opinion and is not barred by res judicata.

B. Permanent and Total Disability

Appellants next argue whether there was substantial evidence to support the award of PTD benefits. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012) defines permanent total disability as the "inability, because of compensable injury or occupational disease, to earn any meaningful wage in the same or other employment." The employee bears the burden of proving the inability to earn wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(2). Permanent total disability shall be determined in accordance with the facts. Ark.

11

Code Ann. § 11-9-519(c). In applying the statute, Arkansas courts have held that the standard is met for PTD when an injured worker could not perform the kind of jobs held before the injury. *See Am. Eagle Airlines v. Burndt*, 2013 Ark. App. 230. Miller asserts that there is substantial evidence in the record to support the Commission's award of PTD benefits, and it should be affirmed by this court. We agree.

Miller testified extensively about her work history. As she explained, all her jobs before her employment with MHM involved significant lifting, prolonged standing, or extensive driving. The chronic pain conditions in her back, hip, and pelvic floor dysfunction prevent her from doing that type of employment. Dr. Dougherty also testified that he did not believe she could return to work as a nurse. In their brief, appellants argue that Miller could return to sedentary employment. The Commission accepted Miller's testimony that she has severe difficulty sitting or standing for long periods and bladder control issues and bowel dysfunction, resulting in her being unable to perform even sedentary work. Questions regarding the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51. We affirm the Commission's opinion that Miller met her burden of proving entitlement to PTD benefits.

## C. Impairment Ratings

Appellants' final argument on appeal addresses whether there was substantial evidence to support the award of permanent impairment in the amount of 5 percent to the body as a whole due to a compensable pelvic floor dysfunction and of 30 percent to the body

as a whole due to a compensable left hip injury. MHM contends that the impairment ratings in question are not supported by objective findings and are based only on her subjective pain and are therefore invalid.

Permanent impairment has been defined as any permanent functional or anatomical loss remaining after the healing period has ended. *Allen v. Staffmark Invs., LLC*, 2022 Ark. App. 252, 646 S.W.3d 646. Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). "Objective findings" are those finding that cannot come under the voluntary control of the patient, and complaints of pain are not to be considered objective medical findings. Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 2012). However, there is no requirement that medical testimony be based solely or expressly on objective findings, only that the record contains supporting objective findings. *Swift-Eckrich, Inc. v. Brock*, 63 Ark. App. 118, 975 S.W.2d 857 (1998). Further, the impairment rating does not have to be based solely or expressly on objective findings, only that the medical evidence of the injury and impairment be supported by objective findings. *Singleton v. City of Pine Bluff*, 102 Ark. App. 305, 285 S.W.3d 253 (2008).

### 1. *Hip*

On August 26, 2021, the Commission affirmed and adopted the finding that Miller sustained a 14 percent permanent impairment to her body as a whole as a result of the injuries to her back and SI joints. Following this decision, Miller required follow-up treatment with Dr. Dougherty that began on November 3, 2021, and underwent objective

scans of her left hip. Through this objective testing, Miller was diagnosed with a gluteus medius tear resulting in tendon inflammation of her left hip. Dr. Dougherty connected these findings to the original compensable injury: "So when you tear tendons, when you sew them back down, they can develop what's called neovascularization, which can cause continued pain when there's an increased substance P, which is associated with pain that comes from the repair site."

In rating Miller, he stated he reviewed her condition, physical exam, and hip function and applied the appropriate edition of the *AMA Guides* and used their system to determine that Miller had a 30 percent impairment based on that condition and the loss of function in her hip. "This court has previously held that when there are objective findings it is improper for the Commission to reject an impairment rating because it was based, in part, on subjective findings." *Ark. Dep't of Corr. v. Washington*, 2024 Ark. App. 181, 685 S.W.3d 347. Substantial evidence supports the Commission's acceptance of Dr. Dougherty's 30 percent impairment rating to the body as a whole as the result of Miller's hip injury.

### 2. *Pelvic floor dysfunction*

With respect to Miller's pelvic floor dysfunction, Dr. Dougherty explained:

So any time you have an injury about the hip, the muscles that connect to the hip are actually very close to the pelvic floor. What we know through research and published studies is, if you have hip pain, you can develop pelvic floor dysfunction. So what that means is problems with urination, bladder retention, posture, simple things like that.

As described by Dr. Dougherty, pelvic floor dysfunction is a permanently disabling condition. He also opined that the pelvic floor dysfunction was a result of Miller's hip injury.

14

During his deposition, he stated he did not know how to rate that condition using the *AMA Guides*. Even though Dr. Dougherty was unable to rate Miller's pelvic floor dysfunction, it is well established that it is the Commission's duty to assess the extent of permanent impairment if a claimant has permanent impairment, but the condition was not rated by a physician. *See Jones v. Wal-Mart Stores, Inc.*, 100 Ark. App. 17, 262 S.W.3d 630 (2007); *Polk Cnty. v. Jones*, 74 Ark. App. 159, 47 S.W.3d 904 (2001); *Johnson v. Gen. Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994).

Accordingly, in the case before us, at the end of the most recent hearing, Miller requested that the ALJ determine what permanent impairment she is entitled to as a result of her pelvic-floor-dysfunction syndrome. In considering that request, the ALJ determined that the pelvic-floor-dysfunction syndrome suffered by Miller is a disabling condition, and in regard to a permanent impairment rating for that condition, stated as follows:

> In this case, I find that Table 17 on page 149 of the *AMA Guides* is appropriate as it deals with bladder dysfunction resulting from spinal cord and central nervous system disorders. The table assigns a 1–9 percent to the body as a whole for a patient that has some degree of voluntary control but is impaired by urgency or intermittent incontinence. Claimant testified that the more hip pain she has, the harder it is to control her bladder. She testified that she has bladder leakage and sometimes feels as if she needs to go to the bathroom when she doesn't. Dr. Dougherty confirmed that claimant occasionally struggles with control of her bladder.

> Based upon the foregoing evidence, I find that claimant is entitled to an impairment rating in an amount equal to 5% to the body as a whole for her bladder dysfunction.

The Commission affirmed and adopted the ALJ's findings with respect to Miller's permanent impairment rating for pelvic floor dysfunction. Dr. Dougherty first saw Miller for

15

pelvic floor dysfunction on November 3, 2021, when she complained of significant bladder leaking. In Dr. Dougherty's medical records admitted as an exhibit, "Her findings are consistent with persistent pelvic floor dysfunction that has not been addressed but is directly related to her prior injuries and the need for subsequent surgery. She also describes significant bladder leaking which is also related and she may benefit from a laser procedure to improve the tonicity of the bladder." His medical records document the pelvic floor dysfunction as a disorder of the muscle. The ALJ found that Dr. Dougherty confirmed Miller's physical complaints regarding her loss of bladder control as her hip pain increased. The impairment rating does not have to be solely based on objective factors; it must only be supported by objective factors. *Swift-Eckrich*, *supra*.

"The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; furthermore, we are bound by the Commission's determinations on issues of credibility." *St. Francis Cnty. v. Watlington*, 2015 Ark. App. 497, 470 S.W.3d 684. It is the duty of the Commission to use its experience and expertise in translating the testimony of the medical experts into findings of fact. *Id.* Dr. Dougherty's testimony regarding this issue went unchallenged. We affirm.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Elizabeth W. Strickland*, for appellants.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee.

16